This is an appeal from a summary judgment granted in favor of Liberty National Life Insurance Company. We reverse and remand.
On February 26, 1980, Charles D. Blanton, age 28, an agent for Liberty National, applied to Liberty National for $25,000 Estate Whole Life Insurance with accidental death benefits, and waiver of premium. The application was submitted to the company on a non-medical basis. With it Blanton paid one-twelfth of the annual premium — $6.44. He was given a receipt for temporary insurance.
The conditions shown on the receipt under which temporary insurance for a limited amount may become effective prior to policy delivery are:
 "A. CONDITIONS UNDER WHICH TEMPORARY INSURANCE FOR A LIMITED AMOUNT MAY BECOME EFFECTIVE PRIOR TO POLICY DELIVERY.
 "If: (1) the amount of money received with the application for insurance is not less than one-twelfth of the first annual premium for the amount of insurance which may become effective prior to delivery of the policy on the plan applied for and any check or draft given in payment thereof is honored when first presented to the drawee bank; and (2) the application form has been completed and all required medical examination, tests, X-rays, and electrocardiograms on the Proposed Insured are completed within 60 days from the date of Part 1 of the application; and (3) on the Effective Date (as defined below), the Proposed Insured is in good health and is a risk acceptable to the Company under its underwriting rules, limits and standards for the plan and amount of insurance applied for at standard premium rates without modification or change; then insurance as limited in Paragraph B shall be in force on the Proposed Insured from the Effective Date until terminated as hereinafter provided in Paragraph C.
 "B. LIMITED AMOUNT OF TEMPORARY INSURANCE COVERAGE PRIOR TO POLICY DELIVERY; SUICIDE.
 "(1) The amount of insurance (including accidental death benefits) which is provided under this Receipt and all other similar Receipts of the Company concurrently outstanding if all the conditions of Paragraph A have been met is the lesser of: (a) the amount of insurance applied for, or (b) $100,000 if the Proposed Insured is between ages 20 and 59 inclusive, or $50,000 if the Proposed Insured is under age 20 or over age 59.
 "(2) No insurance benefit under this Receipt shall be payable if the death of the Proposed Insured shall result from suicide and in such event the only liability of the Company shall be to return to the applicant the amount of the payment acknowledged by this Receipt and received by the Company.
 "C. TERMINATION OF TEMPORARY INSURANCE UNDER THIS RECEIPT.
 "Any temporary insurance provided under Paragraph A as limited by Paragraph B shall cease on the earlier of: (1) the date of the delivery of the policy applied for; or (2) sixty days from the date of the application from which this *Page 775 
Receipt is detached. If the Company does not issue or offer to issue a policy upon the application with such 60 day period, then this application shall be deemed to have been rejected by the Company, the temporary insurance shall terminate, and the only liability of the Company shall be to return to the applicant the amount of the payment acknowledged by this Receipt and received by the Company.
 "D. POLICY ISSUED SHOULD THE PROPOSED INSURED BECOME UNINSURABLE.
 "If on the Effective Date the Proposed Insured is insurable under the conditions of Paragraph A, but subsequently becomes uninsurable under the underwriting rules, limits and standards of the Company for the plan of insurance in the amount and on the premium basis applied for before Termination of Coverage as provided by Paragraph C, the only obligation of the Company shall be to issue the policy or policies applied for limited to the aggregate amount set out in Paragraph B.
"E. EFFECTIVE DATE DEFINED.
 "As used in this Receipt, "Effective Date" shall mean the later of: (1) the date of completion of Part 1 (and Part 2 if required) of the application from which this Receipt is detached or (2) the date of completion of all medical examination, tests, X-Rays and electrocardiograms required by the Company.
"F. RETURN OF PAYMENT MADE WITH APPLICATION.
 "If all the conditions of paragraph A have not been exactly fulfilled, no insurance shall take effect or be provided under this Receipt and the only liability of the Company shall be to return to the applicant the amount of the payment acknowledged by this Receipt and received by the Company."
On March 6, 1980, the Company, from its Birmingham office, mailed an application status letter to Blanton, addressed to his Mobile office. The status letter stated that a medical examination was required of Blanton "due to amount." There is no evidence to show whether Blanton ever received the letter. The evidence shows that the letter was mailed from Birmingham on March 6, and that in the normal course of mail delivery the letter should have reached Mobile the following day, March 7. In the afternoon of March 7, Blanton was killed in an automobile accident.
A claim for insurance proceeds filed by the young widow of Blanton was denied by the Company because Blanton had not taken a physical examination before his death. A law suit filed by the widow to collect the proceeds, coupled with a bad faith claim against the Company followed. The Company's summary judgment motion, supported by deposition of a Company executive and an affidavit by the Mobile office manager, was granted by the trial court. The trial judge was apparently persuaded to grant the motion by this language appearing in the Company's Mobile office manager's affidavit
 "At the time of this application, Mr. Blanton was a soliciting agent for Liberty National Life Insurance Company in Mobile and was assigned to my district. As part of his instructions as such agent, Mr. Blanton was aware that a physical examination was required when the total amount of insurance either in force or applied for from the Company exceeded $50,000.00. The application in question, made the basis of this suit, when filed together with all other insurance owned by Mr. Blanton, exceeded the $50,000.00 limit.
 "A few days prior to his death, I personally informed Mr. Blanton that he had to take a physical examination with regard to the insurance and he told me that he knew he did and was going to make the proper arrangements. Mr. Blanton never had such physical examination prior to his death."
The $50,000 limit given in the manager's affidavit may either be a Company rule not in the record or a condition not appearing in the record. The conditions in the receipt (set out above) do not refer to any limit *Page 776 
described by the manager. Condition B (1) specifically provides that temporary insurance is limited to the lesser of insuranceapplied for or $100,000.00 if the proposed insured is between ages of 20 and 50 inclusive — if Condition A (1), (2), (3) have been met.
Condition A (2) provides for "all required medical examination. . . completed within 60 days from the date of part one of the application." The pertinent item in part one of the application is Item 7. It asks this:
 "Total Life Insurance in Force, Including Accident and Sickness Insurance If Income Disability is Applied For —?"
The amount in force shown in Item 7 is $25,000.00. The "Income Disability" block is left blank.
The net result of "insurance in force or applied for" did not exceed $50,000.00. It is to be noted that the affidavit used the words "in force or applied for" — not "in force plus the amount applied for." We do not find any language in either the application or the receipt for temporary insurance to uphold the manager's affidavit. Indeed, the opposite is shown in the Declaration. Item 3 of the Declaration provides that, "TheCompany will require a medical examination of the ProposedInsured if the amount of insurance applied for exceeds $30,000for a Proposed Insured whose age nearest birthday on date of thisapplication is 0-30 years inclusive. . . ." Blanton, born March 4, 1952, was 28 years old when he filed his application — the amount of insurance applied for was $25,000.00.
We opine that there is insufficient evidence to support a motion for summary judgment under Rule 56 (c), ARCP. Moreover, the Committee Comments to that rule provide that an affidavit which can be considered on motion for summary judgment may only set forth facts that would be admissible in evidence. A court may not consider statements in affidavits based on hearsay, or otherwise inadmissible. Some facts in the manager's affidavit appear to be inadmissible. We pretermit any discussion of the bad faith claim. Additionally, we do not discuss the trial judge's order denying Blanton's motion for summary judgment on count one of the complaint. An order denying a motion for summary judgment is not appealable.
The order granting the summary judgment is reversed and the cause remanded.
REVERSED AND REMANDED.
ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.