Minor Heights Fire District ("the fire district") appeals from the entry of a summary judgment in favor of Andrew W. Skinner and his wife, Pam Skinner. The *Page 611 
summary judgment set aside a foreclosure sale the fire district had conducted to enforce a lien for unpaid service-charge assessments against the Skinners' real property and also denied the fire district's claim to collect due and unpaid service-charge assessments from the Skinners.
On December 7, 1994, the Skinners filed a declaratory- judgment action in the Bessemer Division of the Jefferson Circuit Court, seeking to set aside a foreclosure sale the fire district had conducted on August 7, 1992. The Skinners alleged in their complaint that they had purchased the property and received a deed in 1984 and that their property was located in that portion of Jefferson County falling within the boundaries applicable to the Bessemer Division.[1] They also alleged that they had received notice that on August 7, 1992, the fire district had executed a foreclosure deed on their property for $910 in past-due service-charge assessments. The Skinners denied liability for the service-charge assessments and alleged that the fire district had not complied with the statutory requirements for the foreclosure of its lien for service charges. In addition to the requested declaratory relief, the Skinners also claimed money damages in the amount of $5,000 because of the fire district's alleged improper acts.
The fire district filed an answer and a counterclaim, alleging that it was a duly authorized fire district and that the Skinners' property was within its jurisdiction.[2] The fire district alleged that it had forwarded several written requests to the Skinners in an effort to collect past-due service-charge assessments and that the Skinners owed the fire district $910 as of the date the fire district conducted the foreclosure sale. The fire district alleged that at the foreclosure sale it had sold the Skinners' property to itself for the amount of its service-charge lien, including interest and costs, that it properly arranged for the Probate Court of Jefferson County to issue the Skinners a "warning to redeem" their property, and that the Skinners' right of redemption had expired by operation of law. The fire district requested that the trial court declare that title to the Skinners' property had vested in the fire district and that the court issue a writ of possession in favor of the fire district. The fire district also requested that the court determine the amount of due and unpaid service charges and interest owed by the Skinners and issue a judgment for that amount plus costs, and that the court determine the rent the Skinners owed the fire district for the use of the property during the time the Skinners had remained on the property.
On September 26, 1997, the fire district filed a motion for a summary judgment, supporting its motion with a certified copy of the August 7, 1992, foreclosure deed that had been recorded in the Birmingham Division of the Jefferson Circuit Court on August 10, 1992, and a copy of a "warning to redeem" that had allegedly been mailed to the Skinners on August 18, 1994, by George R. Reynolds, Probate Judge of Jefferson County. The "warning to redeem" also had been recorded in the Birmingham Division of the Jefferson Circuit Court. The fire district further supported its summary-judgment motion with an affidavit from an agent of the fire district who alleged that the Skinners' property had been sold in accordance with applicable law. *Page 612 
On October 21, 1997, the Skinners filed an affidavit in response to the fire district's summary-judgment motion. In their affidavit, the Skinners stated, in pertinent part, that they owned the property in question, but that most of the service charges in question were incurred before they became the owners of the property.[3] The Skinners stated that they had received a statement on January 29, 1992, "showing what the owners delinquency was" and that the amount had changed from $490 on that date to $910 on August 7, 1992, the date of fire district's alleged foreclosure. The Skinners stated that their property was located in the Bessemer Division of the Jefferson Circuit Court, but that notice of the foreclosure sale had been published in the Birmingham News[4] and that all papers relating to the sale had been recorded in the Birmingham Division. The Skinners stated that they had "made payments toward [their] fire bills," that the fire district had accepted those payments, and that the Skinners had "received receipts for" the payments; the Skinners also averred that the fire district had returned a check by which the Skinners attempted to make a service-charge payment "long after [the fire district] had received the money for it."
In response to the Skinners' affidavit, the fire district filed a motion to strike in which it argued that portions of the Skinners' affidavit were conclusory and were insufficient to create a genuine issue of material fact. The record does not reflect a ruling by the trial court on the fire district's motion to strike. However, on June 11, 1998, the trial court entered an order denying the fire district's summary-judgment motion. The court, in pertinent part, stated:
 "[T]he law requires that notice be sent by the probate judge to the last assessed owner after he has determined the deed is in proper form and properly recorded. The deed was recorded in the Birmingham Division of Jefferson County and not Bessemer and the notice was sent from the Birmingham Division.[5] No *Page 613 
 notice has been sent yet to the last assessed owner of the subject property."
On July 13, 1998, the fire district filed a motion requesting that the court revisit the order denying the fire district's summary-judgment motion. The motion included as an exhibit a copy of the foreclosure deed that had been recorded in the Bessemer Division of the Jefferson Circuit Court on April 17, 1995. The trial court denied the fire district's motion on July 20, 1998.
On January 13, 1999, the fire district filed a second motion for a summary judgment, incorporating by reference the first motion and its supporting evidence, the foreclosure deed as recorded in the Bessemer Division on August 17, 1995, and new "warning to redeem" certificates dated October 7, 1998, that had been recorded in the Bessemer Division of the Jefferson Circuit Court and mailed to the Skinners by George R. Reynolds, Judge of Probate of Jefferson County. The fire district also alleged in its brief in support of its second summary-judgment motion that the Skinners' obligation for past due service-charge assessments and costs had increased to $4,423.50.[6] On September 30, 1999, the trial court entered an order denying the fire district's second summary-judgment motion.
On October 15, 1999, the fire district filed a motion requesting that the trial court revisit the order denying the fire district's second summary-judgment motion. The motion included as an exhibit a copy of an affidavit from an agent for the fire district in which he claimed that notice of the foreclosure sale had been published in the BirminghamPost-Herald before the sale (see note 4, supra) and that the fire district had mailed notice of the unpaid service-charge assessments and related costs to the Skinners by letters dated October 14, 1991; May 12, 1992; July 25, 1992; and August 11, 1992. A copy of each letter was attached to the affidavit; each of the letters was addressed to the Skinners at the property's address.[7] The trial court denied the fire district's motion. *Page 614 
On July 31, 2000, the fire district filed a third motion for a summary judgment, incorporating by reference the contents of the two previously filed summary-judgment motions and its October 15, 1999, motion to revisit with all of the latter motion's supporting documentation. After hearing oral argument on the fire district's third summary-judgment motion, the trial court entered the following judgment:
 "The motion for summary [judgment] is argued by the Defendant and by the Plaintiff. The Court finds that the facts as argued by both parties are not in dispute. The Court finds: 1. The account was the account of A.W. Skinner's father who is not the occupant of the [property]; 2. No claim was filed against the estate which owned the property; and 3. The sale of the property occurred in the Birmingham Division for which the sale should have occurred in the Bessemer Division. The motion for summary judgment is denied. The motion for summary [judgment] by plaintiff is argued and is granted setting aside the sale of the property."
On appeal, the fire district argues that the trial court erred in denying its summary-judgment motion and in entering a summary judgment in favor of the Skinners.
As to the denial of the fire district's summary-judgment motion, the order denying that motion is not appealable. See Blanton v. Liberty Nat'lLife Ins. Co., 434 So.2d 773 (Ala. 1983).[8]
As to the summary judgment in favor of the Skinners, the fire district argues that the trial court erred because, it says, the Skinners' motion contained no factual narrative summary as required by Rule 56(c)(1), Ala.R.Civ.P. The fire district also argues that the trial court erred by issuing a summary judgment in favor of the Skinners because, it says, the fire district had established that it had properly conducted the foreclosure sale and obtained title to the property at that sale and that the Skinners were liable to the fire district for due and unpaid service-charge assessments, plus interest and costs.
As to the fire district's first argument, except for the language in the trial court's judgment, the record does not reflect that the Skinners even filed a summary-judgment motion. The fire district argues that the Skinners presented an oral motion for a summary judgment; the Skinners deny that they requested a summary judgment. Generally a party must file a motion for a summary judgment and comply with the requirements of Rule 56, Ala.R.Civ.P. However, when a party files a motion for a summary judgment, a trial court can issue a summary judgment for the opposing party on the court's own motion if it determines that there are no *Page 615 
genuine issues of material fact and that the opposing party is entitled to a judgment as a matter of law. See Adam v. Shelby County Comm'n,415 So.2d 1066 (Ala. 1982). We are unable to determine from the record whether the Skinners made an oral motion for a summary judgment or whether the trial court entered the summary judgment on its own motion. However, regardless of how the motion came before the trial court, we are bound by the record before us, and there is no evidence in the record indicating that the fire district objected to the trial court's hearing the Skinners' "motion" without the presentation of a narrative summary. We will not consider whether the trial court erred by not requiring that the Skinners comply with Rule 56(c)(1), Ala.R.Civ.P., because the fire district has raised that issue for the first time on appeal. See Cofieldv. Thigpen, 533 So.2d 215 (Ala. 1988); Adam, supra.
Before addressing the remaining arguments presented by the fire district, we note that in reviewing a summary judgment we use the same standard that the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. JohnDeere Co., 531 So.2d 860 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794 (Ala. 1989); see also West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989) ("Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."); Ala. Code 1975, § 12-21-12(d). Also, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
As noted, the fire district also argues that the trial court erred in setting aside the foreclosure sale because, it says, the Skinners failed to offer substantial evidence rebutting the fire district's alleged prima facie case establishing that the foreclosure sale was valid. The trial court apparently based its decision to enter the summary judgment in favor of the Skinners upon its conclusions that the service-charge assessment account for the Skinners' property had been the account of A.W. Skinner's father and that he was not the "occupant" of the Skinners' property, that the fire district had not filed a claim against the father's estate, and that the sale of the property had occurred in the wrong division of the Jefferson Circuit Court. However, assuming that the trial court's conclusions were correct, they did not support the trial court's summary judgment in favor of the Skinners.
The local law regarding Jefferson County fire-district service-charge assessments provides, in pertinent part:
 "[A] service charge shall be levied upon and collected from the property owners served by the system. Such charge shall be a personal obligation of the owner of the property served by the system; and to secure the collection of the charge there shall be a lien against said property in favor of the district, which lien shall be enforceable by sale thereof in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized." *Page 616 
Act No. 500, Ala. Acts 1978 (amending § 12 of Act No. 79, Ala. Acts 1966 (Special Session)) (emphasis added). The fire district has directed us in its brief to § 12 of Act No. 79, Ala. Acts 1966, as it was originally enacted in 1966, which stated that the service charge "shall be a personal obligation of the occupant of the property served by the system." (Emphasis added.) Because the trial court used the term "occupant" in its judgment, it appears that the trial court likewise applied § 12 as it was set forth in Act No. 79.
As set forth above, the pertinent part of § 12 was amended by Act No. 500, Ala. Acts 1978, to state that the service charge "shall be a personal obligation of the owner of the property served by the system" (emphasis added). To the extent that the trial court's judgment setting aside the foreclosure sale depended upon who occupied the Skinners' property at the time of the assessments at issue, the trial court incorrectly applied the law.
Also, § 12 of Act No. 79, Ala. Acts 1966, as amended, does not state that the existence of a fire district's lien is dependent upon how the fire district labels the assessment account relating to the property; the lien is dependent only on whether a property owner owns property that is served by the fire district. We agree that the name on the assessment account may have been material for purposes of determining whether the Skinners received appropriate notice of service-charge assessments or of the foreclosure proceedings. However, the fire district presented substantial evidence indicating that the Skinners owned the property at the time of the assessments in question and that they were notified of the assessments and the foreclosure proceedings. The fire district submitted a letter that had allegedly been mailed to the Skinners on October 14, 1991, at the property's address and that claimed that the Skinners owed the fire district $490 for service-charge assessments for the years 1986 through 1991. In their complaint, the Skinners alleged that they had purchased the property in 1984, although they later stated in their affidavit that most of the service-charge assessments related to periods before they had purchased the property and that all statements for 1990 and earlier years had been addressed to W.A. Skinner, who was no longer the owner of the property. At a minimum, a genuine issue of material fact existed regarding whether the Skinners owned the property when the fire district allegedly levied the assessments and when they were notified of their obligation to pay the assessments before the foreclosure sale.
The trial court also based its decision to enter the summary judgment in favor of the Skinners upon its conclusion that the fire district had failed to file a claim against A.W. Skinner's father's "estate, which owned the property." There is no evidence in the record indicating that A.W. Skinner's father's estate ever owned the Skinners' property. The Skinners alleged that W.A. Skinner had owned the property and that he had died. They also alleged that the fire district should have filed a claim against W.A. Skinner's estate. However, Ala. Code 1975, § 43-2-830(a), states, in pertinent part, that "[u]pon the death of a person, decedent's real property devolves to the persons to whom it is devised by decedent's last will or . . . to decedent's heirs." This statute, which became effective on January 1, 1994, is a codification of the common law as it had previously existed in Alabama. See the Commentary to Ala. Code 1975, § 43-2-830. Section 43-2-830(c), Ala. Code 1975, also states that a decedent's real property devolves subject *Page 617 
to the rights of creditors.[9]
Based upon the record, it is unclear whether the Skinners purchased the property in 1984 as they alleged in their complaint, or instead received the property from A.W. Skinner's father by inheritance or devise. Assuming the Skinners purchased the property in 1984, the fire district was not required to file a claim against the estate of A.W. Skinner's father in order to preserve its lien for any service-charge assessments levied after 1984. Assuming that some time after 1984 the Skinners inherited the property or that A.W. Skinner's father devised it to them in his will, the Skinners would have been personally liable for any service charges after the date they received it.[10]
As discussed above, the letters the fire district allegedly addressed to and mailed to the Skinners in 1991 and 1992 (see note 7, supra), related to assessments for the years 1986 through 1991. The Skinners admitted in their affidavit that A.W. Skinner's father did not own the property during the time that statements were mailed to the father "for 1990, and all years prior to that"; they claimed to have purchased the property in 1984. Reviewing the evidence in a light most favorable to the fire district, as we must, it appears that the Skinners received title to the property in 1984 and that as of 1984 they had a duty to have the property assessed in their names. The fire district's service-charge assessments made after that date would have been personal obligations of the Skinners and would have been secured by a lien in favor of the fire district. See Act No. 500, supra; see also Ala. Code 1975, §40-7-3.[11] The fire district presented substantial evidence indicating that the Skinners owned the property at the time of the alleged service-charge assessments and that the Skinners received notice of the assessments before the foreclosure sale. There was no evidence indicating that the fire district was required to file a claim against A.W. Skinner's father's estate in order to preserve its lien or to proceed with the foreclosure sale.
The trial court also concluded that the foreclosure sale was due to be set aside because it had been conducted in the Birmingham Division of the Jefferson Circuit Court. The record reflects that the *Page 618 
foreclosure sale had been conducted at the fire district's fire hall. There is no evidence in the record indicating that the fire hall was located in that portion of Jefferson County falling within the Bessemer Division. However, even assuming that the fire hall was located in the Birmingham Division, our attention has not been directed to any statute or local law requiring that the fire district hold the foreclosure sale in the Bessemer Division.[12] We need not decide this issue, however, because we must affirm the summary judgment setting aside the foreclosure sale on the ground discussed below.
The summary judgment setting aside the foreclosure sale was proper because the evidence submitted by the fire district reflects that, as a matter of law, the sale was not validly conducted. See Boyd v. Brabham,414 So.2d 931 (Ala. 1982) (summary judgment may be affirmed if properly entered, notwithstanding the fact that the trial court may have given the wrong reason for its decision). In order to transfer title, a public sale of land for delinquent taxes or assessments must be conducted strictly in accordance with the statutory procedures governing the sale. See, e.g.,State ex rel. Gallion v. Graham, 273 Ala. 634, 143 So.2d 810 (1962);Drennen v. White, 191 Ala. 274, 68 So. 41 (1915). In Brown v. MinorHeights Fire District, 221 B.R. 849 (Bankr.N.D.Ala. 1998), the United States Bankruptcy Court for the Northern District of Alabama concluded that a foreclosure sale that had been conducted by the same fire district whose foreclosure sale is at issue in the present case was void because that sale had been conducted outside the legal hours of sale. The Brown
court noted that the fire district's enabling act, § 12, Act No. 79, Ala. Acts 1966, as amended by Act No. 500, Ala. Acts 1978, provides that the district may enforce its assessment lien "`in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized.'" Brown, 221 B.R. at 852 (quoting Act No. 500, Ala. Acts 1978) (emphasis omitted). The court therefore held that Ala. Code 1975, § 11-48-49, governed the foreclosure sale at issue in that case; however, since § 11-48-49 prescribes no particular hours of sale, Ala. Code 1975, § 6-8-41, which generally prescribes legal hours of sale for public sales, governed. Id. at 859. That statute provides that "[a]ll public sales shall be made between the hours of 11:00 A.M. and 4:00 P.M., but in the event such sale is not completed by 4:00 P.M., the same may continue until 5:00 P.M." We are in agreement with the analysis set forth in Brown regarding the legal hours of sale applicable to the fire district's foreclosure sale.[13] Both the notice published *Page 619 
by the fire district in the Birmingham Post-Herald and the foreclosure deed stated that the foreclosure sale on the Skinners' property commenced at 10:00 a.m. and continued during the "legal hours of sale." Based upon these submissions, the foreclosure sale was commenced outside of the statutorily prescribed time period and did not strictly comply with the required statutory procedure. The summary judgment setting aside the fire district's foreclosure sale is due to be affirmed.
The fire district also argues that the trial court erred in entering a summary judgment for the Skinners on the fire district's claim for a judgment in the amount of due and unpaid service-charge assessments, plus interest and costs. As discussed above, there is substantial evidence indicating that the Skinners owned the property at the time of some or all of the fire district's service-charge assessments. The Skinners were personally obligated to pay all service-charge assessments against their property that were properly assessed after they became the owners of the property. See Act No. 500, Ala. Acts 1978. The Skinners have not shown that there are no genuine issues of material fact in this regard.
We therefore affirm the summary judgment in favor of the Skinners insofar as it set aside the August 7, 1992, foreclosure sale; we reverse the summary judgment insofar as it held that the fire district has no claim against the Skinners for due and unpaid service-charge assessments assessed after the Skinners became the owners of the property; and we remand the case for further proceedings to ascertain the correct amount of the service-charge assessments, if any, for which the Skinners are obligated, plus interest, costs, and reasonable attorney fees as permitted by law.[14]
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] This area is also known as the Bessemer Cutoff.
[2] The fire district's territorial boundaries allegedly include properties in Jefferson County both inside and outside of the Bessemer Cutoff.
[3] The evidence regarding ownership of the property during the time the service charges were incurred is confusing, to say the least. Although the Skinners alleged in their complaint that they purchased the property in 1984, they stated in their affidavit that the property had been owned by W.A. Skinner (who was apparently A.W. Skinner's father) "at the time most of the [service charges were] incurred on this property." The Skinners also alleged that W.A. Skinner was deceased and that "at the time most of [the service charges] were incurred, his estate was opened and no claim was ever filed by the [fire district] in his estate." The Skinners further alleged, however, that the service-charge statements "for 1990, and all years prior to that, went out to W.A. Skinner, who wasnot the owner of the property." (Emphasis added).
[4] The fire district filed an affidavit of the executive director of the Alabama Press Association in which the director alleged that the notice of the foreclosure sale had been published in the BirminghamPost-Herald, a newspaper of general circulation in Jefferson County, on July 20, 1992, July 27, 1992, and August 3, 1992. The fire district also filed an affidavit in which its agent stated that the notice had been published in the Birmingham Post-Herald. The agent's affidavit had a copy of the published notice from the Birmingham Post-Herald attached as an exhibit.
[5] At all times pertinent to this appeal, George R. Reynolds was the probate judge for Jefferson County, serving both the Birmingham Division and the Bessemer Division. Ala. Code 1975, § 11-48-56, states, in pertinent part, that a person may apply to the probate judge for a "warning to redeem" only after the foreclosure deed "has been recorded in the office of the probate judge of the county in which the property therein described lies." At the time of the fire district's first summary-judgment motion, both the foreclosure deed and the August 18, 1994, "warning to redeem" had been recorded in the Birmingham Division of Jefferson County, instead of the Bessemer Division, where the property was allegedly located. Pursuant to Act No. 490, Ala. Acts 1915, documents that are required to be recorded for the transfer of real property within the Bessemer Division of Jefferson County must be recorded in the Bessemer Division.
[6] The amount included the following:
"Fire service fees from 1987 through 1992 . . . . $600.00
"Sale cost — advertisement research . . . . . . 310.00
"Recording Fee . . . . . . . . . . . . . . . . . 5.50
"Fire service fees from 1993-1999 . . . . . . . . 840.00
"Interest @6% per annum . . . . . . . . . . . . . 718.00
"Attorney fee . . . . . . . . . . . . . . . . . . 1,950.00
"Total Redemption Cost . . . . . . . . . . . . . $4,423.50"
[7] The October 14, 1991, letter claimed that the amount that the Skinners owed for service charges for the period 1986 through 1991 was $490. The letter warned that the trustees of the fire district had passed a resolution authorizing the collection of delinquent accounts. The letter stated that unpaid accounts would be sold as permitted by law and that additional costs would be incurred if the Skinners did not promptly pay the amount that they allegedly owed.
The May 12, 1992, letter stated that the foreclosure sale would be advertised the last two weeks of July and first week of August in theBirmingham Post-Herald and that the sale would occur in the second week of August. The letter stated that the Skinners would owe an additional $150 after the notice had been published and that "the amount required to avoid the advertisement and the additional cost [was] $760."
The July 25, 1992, letter stated that preparation for the sale of the Skinners' property had been completed, that the notice had begun to be published, and that the amount due from the Skinners had increased to include fees and costs associated with the sale preparation. The letter stated that a copy of the published notice of sale had been enclosed and that the amount due from the Skinners had increased to $910.
The August 11, 1992, letter stated that the fire district had purchased the Skinners' property at a foreclosure held on August 7, 1992, and that a copy of the recorded foreclosure deed had been enclosed with the letter. The letter stated that the Skinners had two years to redeem their property by paying the price reflected in the deed ($910), plus recording costs, $2 for a redemption deed, interest at the rate of 8% per annum from the date of sale, and any fire-district service charges that became due before the Skinners exercised their redemption rights. A copy of a certified mail receipt that had allegedly been executed by A.W. Skinner was attached to the letter.
[8] We may review the denial of a party's summary-judgment motion when the other party has "changed testimony or other evidence based on experience gained during the proceedings on the motion for summary judgment" and has subsequently prevailed at trial. See Superskate, Inc.v. Nolen, 641 So.2d 231, 233-34 (Ala. 1994). There is no evidence in the record indicating that the Skinners have changed their testimony based upon experience gained during the summary-judgment proceedings.
[9] Because we conclude that the foreclosure sale was invalid as a matter of law (see, infra), we need not address the issue whether a fire district's lien may be enforced against a decedent's real property when no claim has been filed against the decedent's estate. See Ala. Code 1975, § 43-2-830(c) (a decedent's real property devolves subject to the rights of creditors); Arbo v. State Bank of Elberta, 226 Ala. 52,145 So. 318 (1933) (a corporation's failure to file a claim against a deceased stockholder's estate did not prevent the corporation from enforcing a statutory lien against the stockholders shares of stock). Butsee Long v. King, 117 Ala. 423, 23 So. 534 (1897) (a lien created by operation of law may be dissolved by the death of the property owner and declaration that the property owner's estate is insolvent).
This issue would have been material only if the trial court had determined that some of the service charges at issue were assessed before A.W. Skinner's father had died and while he was the owner of the property, and the fire district had properly attempted to enforce a lien based at least in part upon those assessments.
[10] The record contains no evidence indicating when A.W. Skinner's father owned the Skinners' property, when he died, if or when his estate proceeding was formally opened, or whether the fire district received notice of the estate proceeding complied with the requirements for the running of the nonclaims statute. See Ala. Code 1975, § 43-2-350(b);Jefferson Fed. Sav. and Loan Ass'n v. Clark, 540 So.2d 61 (Ala. 1989).
[11] The fire district apparently uses the tax-assessment roll to determine who is to receive notice of the service-charge assessment.
[12] Local laws relating to the Bessemer Division do contemplate that certain judicial proceedings will be filed in that Division and that documents relating to the transfer of real property located in the Bessemer Division must be recorded in that Division. See Act No. 490, Ala. Acts 1915, § 4; Act No. 213, Ala. Acts 1919, § 2; see alsoUnited Supply Co. v. Hinton Constr. Dev., Inc., 396 So.2d 1047 (Ala. 1981). However, the fire district's statutory foreclosure sale pursuant to Ala. Code 1975, § 11-48-49 (as noted, supra, the fire district was authorized by § 12 of Act No. 79, Ala. Acts 1966, as amended by Act No. 500, Ala. Acts 1978, to enforce its lien by sale "in the same manner in which the foreclosure of a municipal assessment for public improvements is authorized") arguably was not a judicial proceeding, and § 11-48-49 is silent as to the location of a foreclosure sale held under its provisions. Cf. Duncan v. Rudulph, 245 Ala. 175, 16 So.2d 313
(1944) (a sheriff's sale conducted in the Birmingham Division for real property located in the Bessemer Division was in compliance with a statute requiring only that sale be conducted in the county where the real estate was located).
[13] As noted in Brown, the legal hours of sale applicable to the foreclosure of a tax lien are 10:00 a.m. to 4:00 p.m., as set forth in Ala. Code 1975, § 40-10-15. However, in other circumstances, the Alabama Supreme Court has stated that fire district service-charge assessments are not a "tax." See Dewberry Engraving Co. of Alabama,Inc. v. North Shelby County Fire Emergency Med. Dist., 519 So.2d 490
(Ala. 1987) (emphasis added). Even if we determined that the applicable legal hours of sale were those set forth in § 40-10-15, the fire district did not conduct its sale in accordance with the requirements of that statute. As the Brown court noted, § 40-10-15 requires, in pertinent part, that the sale occur "in front of the door of the courthouse" of the county and that the judge of probate attend the sale.Brown, 221 B.R. at 860. Here, as in Brown, the sale occurred at the fire district's fire hall and there is no evidence that the sale was attended by the probate judge.
[14] We note that Act No. 500, Ala. Acts 1978, provides, in pertinent part:
 "The Board of Trustees may provide that upon a person being in default for more than sixty (60) days in paying any service charge due by him he shall be liable to pay any reasonable attorney's fee incurred by the district in its effort to enforce payment of the said service charge whether suit is filed or not."
Provided that the fire district's board of trustees has adopted an appropriate resolution, the fire district may be entitled to reasonable attorney's fees for its efforts to enforce payment of service charges owed by the Skinners. This would not include costs and attorney's fees associated with the invalid attempt to foreclose on the property or to enforce that invalid foreclosure. *Page 620