BRYAN, Judge.
Buco Building Constructors, Inc. (“Buco”), and St. Paul Fire and Marine Insurance Company (“St. Paul”) appeal from summary judgments entered in two consolidated actions in favor of Mayer Electric Supply Company, Inc. (“Mayer”). We reverse and remand.
In Buco Building Constructors, Inc. v. Mayer Electric Supply Co., 960 So.2d 707 (Ala.Civ.App.2006) {“Buco ”), this court dismissed an earlier appeal brought by Buco from a judgment entered in civil action no. CV-04-1092 in the Jefferson Circuit Court, Bessemer Division (“the 2004 action”). In Buco, we summarized the factual background and the procedural history of the 2004 action up to the time of that appeal as follows:
“Mt. Pilgrim Missionary Baptist Church (‘the church’) hired Buco to serve as general contractor in the construction of a family life center for the church (‘the project’). Buco contracted with J & J Electric Company, Inc. (‘J & J’), to perform electrical work on the project. J & J used Mayer as a supplier on the project.
“On June 14, 2004, Mayer served Buco and the church with a notice of intent to claim a materialman’s lien. *123 Mayer stated in the notice that it was owed $36,217.82 for materials supplied for the project. On August 6, 2004, Mayer filed a ‘Verified Statement of Lien’ against the church’s property in the Jefferson County Probate Court.
“On August 24, 2004, Mayer sued J & J, alleging nonpayment of goods that Mayer had supplied to J & J related to the project. Mayer also named J & J’s president, Jerry Davis, Jr., as a defendant, alleging that he had guaranteed this debt. In addition, Mayer named Buco and the church as defendants. As to J & J and Davis, Mayer sought money damages; as to the church, Mayer sought an order perfecting its lien on the church’s property and ordering the sale of that property for the payment of the lien. On October 8, 2004, Buco filed a motion to dismiss in which it argued that Mayer had failed to state a claim against it. The trial court denied the motion.
“On October 22, 2004, J & J answered the complaint and asserted a cross-claim against Buco for breach of contract, alleging that Buco still owed it $102,009.19 for work performed on the project. J & J later filed a cross-claim against the church, asserting a lien on the church’s property for the unpaid balance it claimed Buco owed it. Buco eventually filed a cross-claim against J & J, in which it asserted that it incurred costs in the amount of $100,828 due to J & J’s breach of contract.
“On November 22, 2004, based on its contract with J & J, Buco moved the trial court to stay the proceedings and to compel arbitration. On December 7, 2004, Mayer filed a response to Buco’s motion to compel arbitration in which Mayer argued that it could not be forced to arbitrate its claims because it did not have a contractual relationship with Buco.
“On December 17, 2004, Buco executed a ‘Release of Lien Bond’ that provided:
“‘KNOW ALL MEN BY THESE PRESENT: That we, Buco Building Constructors, Inc. as Principal, and St. Paul Fire and Marine Insurance Company, a corporation organized under the laws of the State of MN, and authorized to transact Surety Business in the State of AL as Surety, are held and firmly bound unto Mayer Electric Supply Company, Inc. as Ob-ligee in the sum of Thirty Six Thousand Two Hundred Seventeen Dollars and 82/100 ($36,217.82) lawful money of the United States of America, for the payment of which, well and truly to be made, we bind ourselves, our heirs, legal representatives, successors and assigns, jointly and severally firmly by these presents.
“ ‘WHEREAS, The Principal entered into a contract with Mt. Pilgrim Baptist Church of Fairfield, Alabama
“ WHEREAS, Mayer Electric Supply Company, Inc. has filed a notice of Claim of Lien in Jefferson County, AL, in the Amount of Thirty Six Thousand Two Hundred Seventeen Dollars and 82/100 ($36,217.82) for materials furnished for Mt. Pilgrim Family Life Center, Grasselli Road, Fairfield, AL, Jefferson County, AL
“‘AND WHEREAS, The Principal desired to obtain the release of the aforementioned lien and has requested the Obligee to accept an indemnity bond conditioned as set forth in lieu thereof.
“ ‘NOW, THEREFORE, the condition of this obligation is such, that if the said Buco Building Constructors, Inc. shall pay any judgment that may be rendered against it by any court of *124 competent jurisdiction, in regards to said lien, then this obligation to be void, otherwise to remain in full force and effect.’
“Although, as noted, the bond provided that Buco had requested that Mayer accept an indemnity bond in lieu of Mayer’s lien on the church’s property, there is no indication in the record that Mayer did so.
“On December 21, 2004, Buco renewed its motion to dismiss, arguing that ‘Mayer failed to state any cause of action against Buco in its complaint’ and that, because, when it objected to Buco’s motion to compel arbitration, Mayer admitted that there was not a contractual relationship between Buco and Mayer, ‘there remained] no basis for Mayer’s claims against Buco.’
“On December 22, 2004, Mayer filed a motion for a summary judgment against J & J and Davis. On May 22, 2005, after a hearing on the motion, the trial court granted the motion and entered a summary judgment in Mayer’s favor. In the judgment, the trial court: (1) awarded Mayer a money judgment against J & J and Davis in the amount of $36,217.82, plus interest in the amount of $5,661.75, and an attorney’s fee of $1,645.50; (2) ordered that Mayer’s lien against the church’s property be perfected; and (3) ordered the circuit clerk to sell the church’s property for the payment of the lien. The trial court certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.
“On June 8, 2005, Buco filed a motion to alter, amend, or vacate the judgment. Buco argued that the trial court’s judgment improperly awarded more relief to Mayer than Mayer had sought in its motion for a summary judgment. Buco also argued that the sale of the church’s property for the satisfaction of Mayer’s lien before resolution of Buco’s and J & J’s cross-claims against each other would deprive Buco and the church of their due-process rights. The trial court denied Buco’s motion.”
960 So.2d at 708-10.
We dismissed Buco’s appeal in Buco because we concluded that Buco had not been aggrieved by the trial court’s judgment and, therefore, lacked standing to bring the appeal:
“In the present case, Buco contends that its interests are adversely affected by that aspect of the judgment ordering the sale of the church’s property. In its appellate brief, Buco asserts:
“ ‘[The] purported perfection or establishment of a lien on the [church’s] property and the sale of the property clearly will have an effect on the rights of [the church] and Buco, even though no remedy against [the church] or Buco was requested in the motion for summary judgment.... [The church], as owner of the property will have an obvious detriment, and Buco, which executed a release of lien [bond] ... will in turn be required to pay the amount of the lien.’
“Although, as noted, the record indicates that a representative of Buco signed a document entitled ‘Release of Lien Bond,’ the record does not demonstrate that this bond was effectively substituted as security for the satisfaction of Mayer’s claims in place of Mayer’s lien on the church’s property.
“Alabama Code 1975, § 35-ll-233(b), sets forth the manner by which a bond may be substituted for a lien as collateral for the payment of a debt owed to, among other things, an unpaid supplier of materials to a construction project. That statute provides, in relevant part:
“ ‘(b) Any lien claimed on real property under this division may be trans *125 ferred by any person having an interest in the real property upon which the lien is imposed or the contract under which the lien is claimed, from such real property to other security by first filing with the court in which the action is brought, a copy of the lien which has been duly filed and recorded as required by law, and by either:
“ ‘(1) Depositing with the court in which the action is brought a sum of money; or
“ ‘(2) Filing with the court a bond executed as surety by a surety insurer licensed to do business in this state, either of which shall be in an amount equal to the amount demanded in such claim of lien plus interest thereon at eight percent per year for three years plus $100.00 to apply on any court costs which may be taxed in any proceeding to enforce said lien.
“ ‘Such deposit or bond shall be conditioned to pay any judgment or decree which may be rendered for the satisfaction of the lien for which such claim of lien was recorded and costs not to exceed $100.00. Upon making such deposit or filing such bond the court shall make and record a certificate showing the transfer of the lien from the real property to the security and mail a copy thereof by registered or certified mail to the lienor named in the claim of lien so transferred at the address stated therein. Within 10 days from the date of the receipt of the said certificate, the lienor may by motion, petition the court in which the action is pending for a hearing on the sufficiency of the amount in question or on the qualifications of the surety insurer. In such an event, the ruling of the court on the said motion, shall be a final determination. Upon the expiration of the said 10 days, or in the event a petition has been filed with the court, upon the determination of the court, and upon filing the certificate of transfer in the court where the lien was filed, the real property shall thereupon be released from the lien claimed and such lien shall be transferred to said security. The court shall be entitled to a fee for making and serving the certificate in the sum of $2.00. Any number of liens may be transferred to one such security.’
“(Emphasis added.)
“In the present case, the only document in the record indicating an attempt by Buco to substitute its promise to pay Mayer’s claim for the lien on the church’s property is the ‘Release of Lien Bond’ that it executed. There is no indication in the record that the bond was filed with the court, as required by § 35-11-233, or that the court issued a ‘certificate showing the transfer of the lien from the real property.’ As a result, the record does not indicate that Buco’s ‘Release of Lien Bond’ was effective to lift Mayer’s lien on the church’s property, nor does it indicate that Buco’s promise to pay Mayer’s claim in lieu of the lien ever became effective.
“We note further that, although Mayer had no contract with Buco and had not made any claim against Buco, the bond itself only obligated Buco to indemnify Mayer in the event of an unpaid monetary judgment in Mayer’s favor against Buco. Section 35-ll-233(b) requires that a bond thereunder ‘be conditioned to pay any judgment or decree which may be rendered for the satisfaction of the lien.’ (Emphasis added.)1
“Given the foregoing, the record does not support Buco’s argument to this *126 court that, because of the judgment in Mayer’s favor, Buco’s execution of the ‘Release of Lien Bond’ requires Buco ‘to pay the amount of the lien.’ We fail to see, therefore, how Buco was aggrieved by the trial court’s judgment in Mayer’s favor, which was directed at a lien on property owned by the church, not Buco. A party that is not aggrieved by a trial court’s judgment cannot appeal from that judgment. See Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Constr. Co., 466 So.2d 83, 88 (Ala.1985); S.W.M. v. D.W.M., 723 So.2d 1271, 1272 (Ala.Civ.App.1998); and Rush v. Heflin, 411 So.2d 1295, 1297 (Ala.Civ.App.1982).
“Because the record does not reflect that Buco was aggrieved by the trial court’s summary judgment in favor of Mayer, it was without standing to appeal that judgment. See Housing Auth. of Uniontown v. Mizell, 368 So.2d 37, 38-39 (Ala.Civ.App.1979). Buco’s lack of standing deprives this court of jurisdiction over the appeal. See Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003). Consequently, the appeal must be dismissed.
" 1 We also note that Buco does not appear to qualify as a person with an 'interest in the real property upon which the lien is imposed' or an interest in the contract between Mayer and J & J under which Mayer claimed the lien and that the bond fails to obligate Buco to pay the interest and costs required by § 35-11 — 233(d)."
960 So.2d at 710-12.
While Buco was pending in this court, J & J’s cross-claims and Buco’s cross-claim were resolved in arbitration. Also while Buco’s appeal in Buco was pending, Mayer, on July 10, 2006, demanded that Buco and St. Paul pay Mayer $36,217.82 under the “Release of Lien Bond.” When Buco and St. Paul did not honor Mayer’s demand, Mayer, on September 8, 2006, filed a second civil action, which was docketed by the Jefferson Circuit Court, Bessemer Division, as civil action no. CV-06-1179 (“the 2006 action”). In the 2006 action, Mayer sued Buco and St. Paul, alleging that Buco and St. Paul had breached the Release of Lien Bond by failing to honor Mayer’s July 10, 2006, demand for payment of $36,217.82 under that bond.
On September 25, 2006, Buco moved the trial court to dismiss the 2006 action on the ground that it violated § 6-5-440, Ala. Code 1975.[1] On October 17, 2006, St. Paul also moved to dismiss the 2006 action on the ground that it violated § 6-5-440. On December 20, 2006, Mayer moved the trial court to consolidate the 2004 action and the 2006 action.
On January 11, 2007, this court issued its certificate of judgment in Buco. On June 1, 2007, Mayer amended its complaint in the 2006 action to add a claim seeking to recover $43,525.07 under a “Labor and Material Payment Bond” dated August 21, 2003. In pertinent part, the Labor and Material Payment Bond stated:
“KNOW All MEN BY THESE PRESENTS; that Buco Building Constructors, Inc. ... as Principal, hereinafter called Principal, and, St. Paul Fire and Marine Insurance Company ... as Surety, hereinafter called Surety, are held and firmly bound unto Mt. Pilgrim Baptist Church ... as Obligee, hereinafter called Owner, for the use and benefit of claimants as hereinbelow defined, in the amount of One Million Four Hun *127 dred Thirty Three Thousand Seven Hundred Fifty Eight Dollars and 00/100 ($1,433,758.00) for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.
“WHEREAS, Principal has by written agreement dated April 11, 2003, entered into a contract with Owner for Mt. Pilgrim Family Life Center, Grasselli Road, Fairfield, AL, Jefferson County, AL in accordance with Drawings and Specifications prepared by Charles Williams & Associates, Inc. ..., which contract is by reference made a part hereof, and is hereinafter referred to as the Contract.
“NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this Obligation shall be void, otherwise it shall remain in full force and effect, subject, however, to the following conditions:
“1. A claimant is defined as one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract. “2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant’s work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The owner shall not be liable for the payment of any costs or expenses of any such suit.
“8. No suit or action shall be commenced hereunder by any claimant:
“a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice to any two of the following: the Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the Principal, Owner or Surety, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the state in which the aforesaid project is located, save that such service need not be made by a public officer.
“b) After the expiration of one (1) year following the date on which Principal ceased Work on said Contract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.
*128 “c) Other than in state court of competent jurisdiction in and for the county or other political subdivision of the state in which the Project, or part thereof, is situated, or in the United States District Court for the district in which the Project, or any part thereof, is situated, and not elsewhere.
“4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety or mechanics hens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.”
On August 22, 2007, the trial court denied the motions to dismiss based on § 6-5-440, which Buco and St. Paul had filed in the 2006 action. On October 29, 2007, Buco moved for a summary judgment in the 2004 action on the ground that Mayer had not purported to state a cause of action against Buco in its complaint in the 2004 action. On November 5, 2007, Buco and St. Paul moved for a summary judgment with respect to Mayer’s claims against them in the 2006 action.
On January 8, 2008, the trial court entered an order granting Buco’s summary-judgment motion in the 2004 action and an order granting Mayer’s motion to consolidate the 2004 action and the 2006 action. On January 28, 2008, the trial court denied Buco and St. Paul’s summary-judgment motion with respect to Mayer’s claims in the 2006 action.
On October 1, 2008, Buco and St. Paul filed a pleading titled “Motion to Dismiss and Motion for Sanctions” (“the October 1, 2008, motion”) in which they moved the trial court to dismiss Mayer’s claims in the 2006 action on the ground that Mayer had released the lien against the church’s property on April 16, 2008, and to impose sanctions against Mayer on the ground that Mayer had continued to prosecute its claim for breach of the Release of Lien Bond despite the church’s failure to substitute the Release of Lien Bond for Mayer’s lien against the church’s property and despite Mayer’s release of the lien. Buco and St. Paul submitted evidence in support of the October 1, 2008, motion. On October 2, 2008, the trial court denied the October 1, 2008, motion.
On July 29, 2009, Mayer moved for a summary judgment against Buco and St. Paul with respect to its claims in the 2006 action, i.e., its claim that Buco and St. Paul had breached the Release of Lien Bond by refusing to honor Mayer’s July 10, 2006, demand for payment of $36,217.82 under the Release of Lien Bond and its claim seeking payment under the Labor and Material Payment Bond. On August 31, 2009, Buco and St. Paul filed a pleading and evidence in opposition to Mayer’s summary-judgment motion. Among other things, Buco and St. Paul asserted that Mayer was not entitled to a summary judgment with respect to its claim asserting breach of the Release of Lien Bond because, they said, this court had held in Buco that the Release of Lien Bond had never become effective.
On January 21, 2010, the trial court entered a summary judgment in favor of Mayer and against Buco and St. Paul in the 2004 action.[2] On February 2,2010, the *129 trial court entered an identical order in the 2006 action. In pertinent part, those orders stated:
“THIS CAUSE coming on to be heard on Mayer Electric Supply Company, Inc.’s (hereinafter ‘Mayer’) Motion for Summary Judgment and the Defendant Buco Building Constructors, Inc. (hereinafter ‘Buco’) and St Paul Fire and Marine Insurance Company[’s] (hereinafter ‘St. Paul’) opposition to [Mayer’s] Motion for Summary Judgment and after hearing argument by counsel of the parties the Court makes the following findings of undisputed ... facts:
“1. Defendant Buco entered into a contract with Mount Pilgrim Baptist Church (hereinafter ‘Church’) for the construction of the Family Life Center (hereinafter ‘Project’) for the Church.
“2. As a part of the contract with the Church, Buco as principal and defendant St. Paul as surety posted a labor and material bond (hereinafter ‘First Bond’) for the Project.
“3. Buco entered into a contract with J & J Electric Co. (hereinafter ‘J & J’) who subsequently purchased materials from Mayer for the Project.
“4. Buco acknowledged receiving from Mayer a Notice of Intent to Claim Materialmen’s Lien on June 17, 2004.
“5. Mayer recorded its Verified Statement of Lien in the Probate Court on August 6, 2004.
“6. On December 17, 2004, Buco and St. Paul executed a Release of Lien [B]ond for the amount of Mayer’s statement of lien and on December 21, 2004, the church made its final payment to Buco of $88,573.00.
“7. Mayer filed suit on its lien and obtained a judgment perfecting its lien on the Church on May 26, 2005.
“8. On July 10, 2006, Mayer made demand under the Release of Lien Bond which was subsequently refused and resulted in the present action.
“The Court makes the following conclusions and findings: [Buco and St. Paul] attempt to raise a disputed issue of fact that the materials Mayer claims to have supplied J & J were not actually incorporated in the Project and, therefore, Mayer has not met its burden as a claimant under the First Bond. However, Buco was a party to the original lien action and failed to raise this as a defense before this Court’s Order rendering a materialmen’s lien in favor of Mayer and therefore is judicially estopped from raising this as a defense to this action. Buco also contends that Mayer failed to bring suit under the First Bond within one year following the date on which Buco ceased to so work on the contract. The Court finds it is unnecessary to reach this issue as it is admitted by Buco in its opposition to Mayer’s Motion that the Release of Lien Bond provided to the Church by [Buco and St. Paul] on December 17, 2004, superseded the First Bond.
“The Court therefore finds that the Release of Lien Bond posted by [Buco and St. Paul] on December 17, 2004, is at the heart of [Mayer’s] Motion for Summary Judgment. This Court must determine whether [Mayer], as a matter of law, is entitled to summary judgment based upon the terms of the Release of Lien Bond. The Court finds it extremely important to its decision that the Re *130 lease of Lien Bond references not only the Plaintiff Mayer but also the exact amount of Mayer’s lien ($36,217.82), and was given to the Church four days before Buco received a final payment in the amount of $88,573.00. This unpaid balance would have been the amount to which Mayer’s lien would have attached by this Court’s judgment awarding Mayer a materialmen’s lien on May 26, 2005, if Buco had not given the Church the Release of Lien Bond in order to receive its final payment.
“The Court does not find it relevant to its decision that the Release of Lien Bond was not filed in the Probate Court to substitute for Mayer’s lien, as contended by [Buco and St. Paul], The Release of Lien Bond became a contractual obligation at the time it was executed by [Buco and St. Paul] and not by the fact of any recording.
“The Court must therefore look within the four corners of the Release of Lien Bond to determine the obligations of the parties. [Buco and St. Paul] contend that because Mayer released its lien on April 16, 2008, Mayer no longer has a claim. However, the Release of Lien Bond states that the principal, Buco, desired to obtain a release of the aforementioned lien and accepted the obligation under the Release of Lien Bond as a condition of the release. Therefore, Buco cannot claim this now as a defense. It is clear from the language of the bond that Buco and St. Paul would be bound to Mayer until one of two things occurred: (1) either Mayer is paid or (2) Buco pays a judgment rendered against it. Neither of these circumstances has occurred. The Release of Lien Bond was given to prevent the very thing that did occur, a lien by Mayer being imposed on the Church. For the reasons set forth above, Mayer has demonstrated there are no undisputed issues of material fact[ ] and it is entitled to judgment as a matter of law regarding its claim under the Release of Lien Bond;
“It is therefore ORDERED, ADJUDGED, AND DECREED by the Court as follows:
“1. That a money judgment is hereby entered in favor of the Plaintiff, Mayer Electric Supply Company, Inc. and against the Defendants Buco Building Constructors, Inc. and St. Paul Fire and Marine Insurance in the amount of $36,217.82 plus legal interest of 6% in the amount of $6,840.71 from July 10, 2006, the date Mayer served St. Paul [with] a demand for payment under the Release of Lien Bond, for a total money judgment of $43,058.53.”
Buco and St. Paul then timely filed a notice of appeal to this court.
First, Buco and St. Paul argue that the trial court erred in denying their motion for a summary judgment with respect to Mayer’s claims in the 2006 action. However, subject to exceptions not here applicable, appellate courts do not review the denial of a summary-judgment motion. See, e.g. Minor Heights Fire Dist. v. Skinner, 831 So.2d 609, 614 (Ala.Civ.App.2002). In Minor Heights, this court stated:
“On appeal, the fire district argues that the trial court erred in denying its summary-judgment motion and in entering a summary judgment in favor of the Skinners.
“As to the denial of the fire district’s summary-judgment motion, the order denying that motion is not appealable. See Blanton v. Liberty Nat’l Life Ins. Co., 434 So.2d 773 (Ala.1983).”
831 So.2d at 614 (footnote omitted).
Second, Buco and St. Paul perfunctorily argue without citation of authority that the trial court erred in denying their *131 October 1, 2008, motion. However, although that motion was titled a motion to dismiss, it constituted a motion for a summary judgment because Buco and St. Paul presented evidence in support of it and the trial court did not exclude that evidence. See Rule 12(b), Ala. R. Civ. P. (“If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....”). As noted above, subject to exceptions not here applicable, appellate courts do not review the denial of a summary-judgment motion. See, e.g., Minor Heights, supra.
Third, Buco and St. Paul argue that the trial court erred in granting Mayer’s summary-judgment motion with respect to its claim for breach of the Release of Lien Bond. Specifically, they argue, among other things, that the trial court’s granting of that motion was erroneous because, they say, this court held in Buco that the Release of Lien Bond did not become effective and that that holding constitutes the law of the case. Mayer, on the other hand, argues that the Release of Lien Bond constitutes a binding contract regardless of whether it was effectively substituted for Mayer’s lien on the church’s property as collateral securing the payment of the debt owed by J & J to Mayer pursuant to § 85 — 11—233(b). Mayer further argues that the language in Buco stating that the Release of Lien Bond did not become effective was obiter dictum because, it says, this court did not have jurisdiction over Buco’s appeal in Buco.
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
In Buco, this court had jurisdiction to determine whether it had jurisdiction over Buco’s appeal. See Jefferson County Comm’n v. Edwards, 32 So.3d 572, 583 (Ala.2009) (“A court has jurisdiction to determine its own jurisdiction.”). Our holding in Buco that the Release of Lien Bond had not become effective under § 35-11-233(b) and our holding that “the [Release of Lien Bond] itself only obligated Buco to indemnify Mayer in the event of an unpaid monetary judgment in Mayer’s favor against Buco ” were necessary to our decision that Buco was not aggrieved by the *132 judgment that was the subject of the appeal in Buco, 960 So.2d at 711. Thus, “[bjecause obiter dictum is, by definition, not essential to the judgment of the court which states the dictum..." Ex parte Williams, 838 So.2d 1028, 1031 (Ala.2002), those holdings in Buco were not obiter dicta. Moreover, because the parties have not directed us to any change in the facts since our decision in Buco, those holdings became the law of the case. See Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987) (“Under the doctrine of the ‘law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.”). Our holding that the Release of Lien Bond had not become effective under § 35-ll-233(b) precluded Mayer from prevailing on its claim based on the Release of Lien Bond on the theory that that bond had become effectively substituted for Mayer’s lien on the church’s property. Our holding that “the [Release of Lien Bond] itself only obligated Buco to indemnify Mayer in the event of an unpaid monetary judgment in Mayer’s favor against Buco ” (960 So.2d at 711) precluded Mayer from recovering for breach of the Release of Lien Bond on the theory that it constituted an enforceable contract regardless of whether it was effectively substituted for the lien on the church’s property pursuant to § 35-ll-233(b) because it is undisputed that Mayer had not obtained a judgment against Buco before making its July 10, 2006, demand for payment under the Release of Lien Bond. Accordingly, we reverse the summary judgment in favor of Mayer and remand the action to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ„ concur.
THOMPSON, P.J., and MOORE, J., concur in the result, without writings.

. Section 6-5-440 provides:
"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.”

. We recognize that the entry of a summary judgment in favor of Mayer in the 2004 action was anomalous in several respects. First Mayer’s complaint in the 2004 action did not purport to state a claim against Buco. Second, Mayer’s complaint in the 2004 action neither named St. Paul as a defendant nor purported to state a claim against St. Paul. Third, the trial court had already entered a summary judgment in favor of Buco in the *129 2004 action on the ground that Mayer’s complaint in the 2004 action did not purport to state a claim against Buco. Finally, Mayer's summary-judgment motion had sought a summary judgment only with respect to the claims Mayer had stated against Buco and St. Paul in the 2006 action.