The Springhill Apartments, LLC ("Springhill"), is composed of two members: Carol R. Skelton and Wayne A. Smith. The record indicates the following facts. On May 7, 1997, Skelton and Smith, on behalf of Springhill, executed a promissory note, which was secured by a mortgage, in the amount of $940,000 in favor of National Bank of the South (now known as National Bank of Commerce) (hereinafter referred to as "NBC") to purchase property known as Springhill Apartments ("the property").
In early 2002, Springhill defaulted on the note to NBC, and NBC foreclosed the mortgage on the property. On May 31, 2002, NBC conducted the foreclosure sale on the steps of the Tuscaloosa County Courthouse, at which time the property was sold to JG, LLC ("JG"), for $850,100. On June 20, 2002, NBC conveyed title to JG by a mortgage-foreclosure deed. Thereafter, JG executed a promissory note, which was secured by a mortgage on the property, to Regions Bank.[1]
In the spring of 2003, Skelton, one of the members of Springhill, decided that she wished to exercise her right, under § 6-5-248, Ala. Code 1975, to redeem the property.[2] She sent a demand for an itemized statement of the debt and all lawful charges, pursuant to § 6-5-252, Ala. Code 1975,[3] to J G; that demand, dated March 13, 2003, stated:
 "Please consider this a formal notification that I am considering the redemption of `The Springhill Apartments.'
 "Therefore, I am requesting that you furnish me an itemized listing of all lawful charges paid through today[']s date, along with copies of dated invoices and dated proof of payments. I request that these be furnished to me within ten days of this letter. Please mail to:
 "Carol Skelton [Post office box address] Tuscaloosa, AL. *Page 928 
"Thank you, and if you have any questions feel free to contact me at [two different telephone numbers]."
Skelton mailed the demand letter by United States certified mail, return receipt requested, on March 22, 2003, and JG received the demand letter on March 25, 2003. The parties subsequently stipulated that the demand letter was a notice of redemption.
JG, through its attorney, prepared an itemized statement of all lawful charges to redeem the property. On March 28, 2003, three days after JG received the demand letter, JG's attorney mailed the statement of lawful charges by United States certified mail to Skelton.[4] Although that statement was deposited in the mail in Tuscaloosa, Skelton did not receive the statement until April 16, 2003.[5]
On April 11, 2003, before Skelton received the statement of lawful charges, Skelton and Springhill (hereinafter collectively "the plaintiffs") filed a complaint in the trial court seeking the redemption of the property. In their complaint, the plaintiffs alleged, among other things, that they had made a demand for a statement of lawful charges on March 25, 2003, pursuant to § 6-5-252, and that JG had failed or refused to respond within the 10-day period for response under § 6-5-252. The plaintiffs did not tender any money with their complaint seeking to redeem the property.
On May 6, 2003, JG filed a motion to dismiss; that motion was subsequently denied by the trial court. Thereafter, JG filed an answer, denying the material allegations in the complaint and further claiming that it had mailed the statement of lawful charges on March 28, 2003, by certified mail and that that statement indicated that the cost to redeem the property totaled $956,992.45.
On June 25, 2003, the plaintiffs filed a motion for JG to pay the rental proceeds it was receiving from the property into the trial court or to place them in an escrow account. In response, JG denied it was liable to the plaintiffs for the rental proceeds.
On August 3, 2003, Doris Jenkins Hall filed a motion in which she sought to be substituted as the plaintiff or, in the alternative, to be added as an additional plaintiff in the action. In her motion, Hall alleged that the plaintiffs had assigned their redemption rights to her. On September 4, 2003, the trial court entered an order adding Hall as a plaintiff. (Hall is hereinafter included in our designation of "the plaintiffs.")
The case was tried on November 4, 2003, and shortly thereafter the parties filed briefs in support of their respective positions. At the trial and in their posttrial brief, the plaintiffs argued that because JG did not furnish them with the statement of lawful charges within the 10-day period for response under § 6-5-252, the plaintiffs were excused from providing tender with their complaint to redeem and that JG had forfeited its right to compensation for improvements. The plaintiffs also argued that the date of redemption was the date the complaint to redeem was filed because tender was excused under § 6-5-252, and, accordingly, that they *Page 929 
were entitled to the rental proceeds under § 6-5-253(c), Ala. Code 1975, subsequent to the date of redemption. The plaintiffs further argued that the applicable interest rate should be the "contract rate" of interest under § 8-8-10, Ala. Code 1975.[6]
In its posttrial brief, JG argued that the plaintiffs had not preserved the right to redemption because, without excuse, they had failed to provide tender with the filing of the complaint to redeem or at the time they received JG's statement of lawful charges. JG further argued that the date of redemption had not occurred due to the plaintiffs' failure, without excuse, to provide any tender at the time they filed the complaint to redeem or after they received the statement of lawful charges. Therefore, JG claimed, the plaintiffs were not entitled to any rental proceeds under § 6-5-253(c). JG also argued that the applicable interest rate should be the statutory fixed rate of 12% under § 8-8-10.
On January 20, 2004, the trial court entered a judgment in favor of JG. In the January 20, 2004, judgment, the trial court found, in pertinent part:
 "Skelton sent a notice of contemplation of redemption to [JG] . . . that . . . was received by [JG] on March 25, 2003. [JG] . . . responded to this request with a statement of debt and lawful charges by mailing the response certified mail, return receipt requested. This response was deposited in the United States mail on March 28, 2003. Inexplicably this response . . . was not delivered . . . until April 16, 2003. The Court finds that [JG] responded promptly and in the same mode of delivery used by [Skelton]. The Court finds that the request for a statement of the debt and lawful charges, and [JG's] response to the request, were both timely delivered based upon the authority of Watts v. Rudulph Real Estate, Inc., 675 So.2d 411 (Ala. 1996). The Court finds that [JG] made a good faith effort and substantially complied with the statutorily prescribed procedure.
 "The plaintiffs . . . filed their complaint for redemption on April 11, 2003. The plaintiffs tendered no money at the time of the filing of their complaint. Upon receipt of the statement of debt and lawful charges, five days later on April 16, 2003, the plaintiffs still did not tender any money in compliance with the Code, nor did the plaintiffs invoke the statutory means for resolving disputes with respect to lawful charges.
 "[JG] objected to redemption, based upon the failure of the plaintiff[s] to actually tender any part of the purchase price paid at the foreclosure sale or any other debt or lawful charge.
 "The Court heard oral testimony from . . . Skelton and . . . Hall and the Court finds based upon their own testimony that — except for a minor dispute or approximately one-quarter of one percent of the lawful charges — the plaintiff[s] knew, or with any reasonable diligence on [their] part could have known the exact amount of the redemption at the time of the filing of the complaint or within days thereafter. Nevertheless, from April 2003 to the time of trial . . . neither the plaintiff[s] nor any other person entitled to redeem under the Code, tendered any sums of money in order to effect the redemption. Alabama Code § 6-5-253 (1975), requires as a condition of redemption that the person entitled to redeem tender the *Page 930 
purchase price paid at the foreclosure sale and all other lawful charges. The plaintiff[s] could have known with almost exact certitude the amount of debt and lawful charges, but chose not to tender any funds. The Court finds that the plaintiff[s] presented no valid excuse for failing to tender.
 "Tender requires that the party making the tender actually deposit sums and not simply offer to deposit sums. See Camp v. Simon, 34 Ala. 126 (1859), Decker v. State National Bank, [255 Ala. 373,] 51 So.2d 538 (Ala. 1951). Having failed to tender, the Court finds that the plaintiff[s] do not qualify for redemption. See Moore v. Horton, 491 So.2d 921
(Ala. 1986). The Court specifically finds that the plaintiff[s] ha[ve] not substantially complied with [their] responsibilities outlined in the statute, and ha[ve] therefore lost the right to redeem under the statute."
(Emphasis in original.)
The plaintiffs filed a motion to alter, amend, or vacate. After the trial court heard oral arguments, it entered a judgment on May 5, 2004, denying the plaintiffs' postjudgment motion. In its May 5, 2004, judgment, the trial court refused to disturb its previous determinations that the plaintiffs had failed to exercise due diligence or act in good faith in their effort to redeem the property and that JG had substantially complied with § 6-5-252. The plaintiffs timely appealed to the supreme court; that court transferred this appeal to this court, pursuant to §12-2-7(6), Ala. Code 1975.
The plaintiffs contend on appeal that the trial court erred in finding that JG timely furnished a statement of lawful charges under § 6-5-252; they argue that because JG's statement of lawful charges was late, they were excused from providing tender with their complaint to redeem under that statutory provision. Accordingly, the plaintiffs argue they did not forfeit their right of redemption. For the reasons discussed below, we agree.
At the outset, we note the standard of review. The relevant facts as set out above are essentially undisputed.
 "`Questions of law are not subject to the ore tenus standard of review.' Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala. 2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala. 1993). This court reviews the application of law to facts de novo. Allstate [Ins. Co. v. Skelton], 675 So.2d [377] at 379 [(Ala. 1996)] (`Where the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.')."
City of Prattville v. Post, 831 So.2d 622, 628 (Ala.Civ.App. 2002).
The case before us is essentially a case of statutory construction. Section 6-5-252 provides:
 "Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee. If the purchaser or his or her transferee fails to furnish a written, itemized statement of all lawful charges within 10 days after demand, he or she shall forfeit all *Page 931 
claims or right to compensation for improvements, and the party so entitled to redeem may, on the expiration of the 10 days, file his or her complaint without a tender to enforce his or her rights under this article and file a lis pendens with the probate court."
Section 6-5-253(a) provides, in pertinent part, that "[a]nyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, . . . and all other lawful charges." "[I]n order to redeem under the [redemption] statute[s][, § 6-5-247 et seq., Ala. Code 1975] one must either aver a payment or tender of all the amounts required by the statute, or show a valid excuse for failure to do so."Moore v. Horton, 491 So.2d 921, 923 (Ala. 1986).[7]
Section 6-5-256, Ala. Code 1975, provides:
 "Upon the filing of any complaint as provided in these sections and paying into court the amount of purchase money and the interest necessary for redemption and all lawful charges, if the written statement thereof has been furnished or, if not furnished, offering to pay such debt or purchase price and all lawful charges, the circuit court shall take jurisdiction thereof and settle and adjust all the rights and equities of the parties, as provided in this article."
Regarding the principles of statutory construction applicable to the present case, our supreme court has said:
 "`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."'
 "Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992)).
 "`. . . [I]t is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.'
 "DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala. 1998)."
W.L.S. v. K.S.S.V., 810 So.2d 777, 779 (Ala.Civ.App. 2001). Additionally, "[s]ections of the Code originally constituting a single act must be read in pari materia in order to `produce a harmonious whole.'" Ex parte Jackson, 625 So.2d 425, 428 (Ala. 1992) (quoting 2A Norman J. Singer, Sutherland StatutoryConstruction § 46.05 (5th ed. 1993)) (footnote omitted). We also note that
 "redemption statutes [are to] be liberally construed in favor of redemption. `[W]hile their terms are not to be extended by implication beyond what the legislature has authorized or intended, the construction in any case of doubt or *Page 932 
ambiguity should be in favor of the right to redeem.' Cox v. Junkins, 431 So.2d 497, 499 (Ala. 1983), quoting 59 C.J.S. Mortgages § 819, p. 1564."
Watts v. Rudulph Real Estate, Inc., 675 So.2d 411, 413 (Ala. 1996).
Under the plain language of § 6-5-252 and § 6-5-256, it is clear that a redemptioner is excused from tender at the time he files the complaint to redeem where he has timely furnished the purchaser with a demand for a statement of lawful charges and the 10-day statutory period for response has expired without the purchaser furnishing the redemptioner the statement of lawful charges. Our supreme court has so held in Shealy v. Golden,897 So.2d 268 (Ala. 2004) (as modified on denial of rehearing), andPurcell v. Smith, 388 So.2d 525 (Ala. 1980) (both recognizing that, upon timely demand made by the redemptioner, the purchaser's failure to timely furnish the redemptioner with the statement of lawful charges excuses tender and forfeits the purchaser's right to payment for improvements);[8] seealso Harris v. Bradford, 245 Ala. 434, 17 So.2d 145 (1944) (failure of the purchaser to furnish the statement of debt and lawful charges upon demand made by the redemptioner relieves the redemptioner of the necessity of making tender of the purchase price and lawful charges as a condition precedent to the maintenance of an action to exercise the statutory right of redemption); Lee v. Macon County Bank, 233 Ala. 522,172 So. 662 (1937) (the failure of the purchaser to timely furnish the redemptioner, within 10 days after such written demand is made on the purchaser, a written itemized statement of the debt and lawful charges claimed by the purchaser and required for redemption results in the purchaser's forfeiting all claims or right to compensation for improvements; also the redemptioner is entitled to file a bill to enforce the statutory right of redemption without a tender by simply offering to pay purchaser's debt and all lawful charges).
There is no requirement in the redemption statutes that, in order to preserve the right of redemption, the redemptioner, upon the purchaser's failure to furnish the redemptioner with a statement of lawful charges within the 10-day statutory period for response, must use reasonable diligence to ascertain the redemption costs and tender that amount at the time the complaint to redeem is filed. Additionally, there is no requirement in the redemption statutes that a redemptioner who is excused from tender at the time of filing the complaint to redeem must subsequently provide tender when the purchaser furnishes the statement of lawful charges.
Although we agree with the trial court that Watts v. RudulphReal Estate, supra, Purcell v. Smith, supra, and Hale v.Kinnaird, 200 Ala. 596, 76 So. 954 (1917), stand for the general proposition that both the redemptioner and the purchaser should act in good faith and exercise due diligence, those cases cannot be relied upon to place additional requirements on the redemptioner that are not found in the redemption statutes. This court will not do by judicial fiat, under the guise of a "good faith" or "due diligence" obligation, that which the legislature chose not to do. Additionally, as an intermediate appellate court, we are bound by the precedent set by our supreme court.See § 12-3-16, Ala. Code 1975. *Page 933 
Thus, the dispositive issue in this appeal is whether JGfurnished the statement of lawful charges within the 10-day period for response under § 6-5-252. We begin our analysis of this issue by noting that in Purcell v. Smith,388 So.2d at 528, our supreme court held that when a redemptioner mails the demand for lawful charges, "[t]he ten-day period [under §6-5-252] for response by the purchaser must begin to run from actual receipt by the purchaser of the demand." In so holding, our supreme court reasoned that where either the redemptioner or the purchaser relies on the vagaries of modern mail delivery to furnish the other party with the demand or the statement of lawful charges, that reliance cannot adversely affect important rights of the party to whom the demand or the statement of lawful charges is sent. Purcell v. Smith, 388 So.2d at 528. If the vagaries of the mail delivery affect an important right of either party, it must affect the right of the party who is relying on the mail for compliance with § 6-5-252. Purcell v. Smith,388 So.2d at 528. Specifically, in Purcell our supreme court stated:
 "[A] demand for a statement of lawful charges, sent by mail, is deemed made when received by the purchaser. The burden of compliance rests upon the redemptioner and any delay in the making of the demand must, similarly, affect his right rather than that of the purchaser upon whom the demand is made. Since the forfeiture of important rights depends upon the timeliness of a response, the purchaser cannot be penalized by the uncertainties of the mails and the burden rests on the redemptioner to make a written demand, by whatever mode, within the statutory time limit. Of course, the purchaser may not intentionally defeat the privilege to redeem. See Hudson v. Morton, 231 Ala. 392, 165 So. 227 (1936)."
Purcell v. Smith, 388 So.2d at 528-29.
Thus, Skelton timely made a written demand on JG for a statement of lawful charges on March 25, 2003, the date JG received that demand letter. Under § 6-5-252, JG had until April 4, 2003, to furnish Skelton the statement of lawful charges. Although JG mailed the statement of lawful charges three days later, on March 28, 2003, Skelton did not receive that statement until April 16, 2003 — after the 10-day statutory period for response had expired and after the plaintiffs had filed the complaint to redeem.[9] Based on the facts of this case, it is apparent that the trial court misapplied the principle inPurcell that "[t]he forfeiture of such important rights cannot depend upon the vagaries of modern mail delivery."388 So.2d at 528. The trial court incorrectly applied that principle in favor of the party who was relying on the mail for compliance with §6-5-252 and against the party to whom the mail was sent. As previously stated, our supreme court made it clear in Purcell
that the vagaries of the mail delivery cannot adversely affect an important right of the party to whom the mail is sent.388 So.2d at 528. There is no authority for this court to apply the "mailbox rule" to the redemption statutes. In the demand letter, Skelton provided a post office box address and two telephone numbers where she could be reached. There is no evidence that any supposed bad faith or lack of due diligence on her part contributed to the delay in the mail delivery of the statement of lawful charges until after the 10-day statutory period for response had expired. Under the facts of this case, we hold that JG did not furnish Skelton the *Page 934 
statement of lawful charges within the 10-day period for response under § 6-5-252. We note that the trial court found that JG substantially complied with § 6-5-252 and acted in good faith and exercised due diligence in furnishing the statement of lawful charges in the manner requested by Skelton in the demand letter. However, that finding does not change the fact that Skelton did not receive that statement within the 10-day statutory period for response or at any time before the plaintiffs filed the complaint to redeem. JG's reliance on the mail cannot deprive the plaintiffs of an important right, i.e., the right to file a complaint to redeem without tender where JG did not furnish the statement of lawful charges within the 10-day period under §6-5-252. Therefore, because the plaintiffs timely furnished JG with a demand for lawful charges and JG failed to furnish that statement within the 10-day period for response pursuant to §6-5-252, the plaintiffs were excused from providing tender with the filing of the complaint to redeem. It would indeed be a harsh result to deprive the plaintiffs of their right of redemption where there is no statutory authority or caselaw precedent for doing so.
Accordingly, we conclude the plaintiffs have not forfeited their right of redemption and the judgment of the trial court is reversed. The cause is remanded for the trial court to address the remaining issues in this case and to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, PITTMAN, and MURDOCK, JJ., concur.
[1] The terms of that promissory note were as follows: principal amount of $875,000, with an initial variable interest rate of 4.75%, and a maturity date of July 15, 2022.
[2] Skelton's right to redeem is not at issue in this case.See § 6-5-248, Ala. Code 1975 (listing persons entitled to exercise the right of redemption). Therefore, we do not address that issue.
[3] Section 6-5-252 is set forth in its entirety later in this opinion.
[4] Although it is not entirely clear from the record, it appears that JG also requested a return receipt.
[5] We note that although the certified-mail receipt reflects that Skelton did not receive the statement of lawful charges until April 16, 2003, that receipt appears to indicate that delivery was first attempted on April 12, 2003. However, the trial court's finding in its judgment that Skelton received the statement on April 16, 2003, is not at issue on appeal.
[6] Although not addressed in their posttrial brief, the plaintiffs also argued at the trial that assuming arguendo JG was entitled to be paid for the improvements, the parties disagreed as to the amount and/or value of the improvements.
[7] Although the redemption statutory provisions have been amended, and/or repealed and reenacted from time to time, the substance of the statutory provisions at issue have not changed. The statutes applicable to this case were originally enacted as part of a single act. See Act No. 88-441, Ala. Acts 1988.
[8] We note that in Shealy v. Golden, the supreme court held, among other things, that "Ala. Code 1975, § 1-1-4 governs the computation of the 10-day time period within which a purchaser . . . must provide a statement of lawful charges under . . . § 6-5-252." 897 So.2d at 274.
[9] Because it is not at issue in this case, we do not address the effect of attempted delivery on April 12, 2003. See n. 5, supra. We note, however, that April 12, 2003, was outside the 10-day statutory period for response.