BRYAN, Judge.
Steven Chess appeals from an order granting the summary-judgment motion of Wade Burt.[1] We reverse and remand.

Factual Background and Procedural History

On March 17, 2008, Richard A. Gram-mer (“Richard”) and S. Diane Grammer (“Diane”) mortgaged a parcel of real property in Chilton County (“the property”) to Peachtree Bank to secure the payment of a promissory note in the principal amount *1203 of $214,387.63. On January 28, February 4, and February 11, 2010, Peachtree Bank published a notice that the property would be sold at a foreclosure sale on February 18, 2010.
On February 16, 2010, Diane executed a document titled “Assignment of Statutory Right of Redemption from Foreclosure” (“the February 16, 2010, assignment”). In pertinent part, the February 16, 2010, assignment stated:
“This Assignment of Statutory Right of Redemption from Foreclosure ... is made and entered into by and between [Diane] and [Chess] on this the 16th day of FEBRUARY, 2010.
“RECITALS
“WHEREAS, [Diane] owns [the property]; and
“WHEREAS, [the property] is encumbered by a mortgage and is now subject to foreclosure, and [Diane] desires to assign their [sic] statutory right of redemption to [Chess].
“NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, in hand paid to [Diane] by [Chess], [Diane] does hereby grant, bargain, sell, assign, transfer and set over unto [Chess] all of [Diane’s] right of redemption from foreclosure of that certain mortgage executed by RICHARD GRAMMER AND S. DIANE GRAMMER to PEACHTREE BANK on the 17 day of MARCH, 2008 ... together with all other right, title and interest of [Diane] in and to the property...
(Capitalization in original; emphasis added.)
On February 18, 2010, Peachtree Bank held a foreclosure sale. Burt, who bid $300,000, was the highest bidder at the foreclosure sale, and the auctioneer executed a foreclosure deed conveying the property to Burt.
On March 17, 2010, Chess sued Burt, seeking to redeem the property. Chess’s complaint alleged that, by virtue of the February 16, 2010, assignment, Chess was a transferee of Diane’s right to redeem the property and, therefore, had a right to redeem the property under § 6-5-248(a)(5), Ala.Code 1975.[2] Chess’s complaint further alleged that he had demanded that Burt provide him with a written statement of the charges to redeem the property and that Burt had failed to respond to that demand within 10 days. In addition, Chess’s complaint alleged that Burt’s failure to respond to Chess’s demand for a written statement of the lawful charges to redeem the property within 10 days had relieved Chess of the obligation to tender payment of the amount required to redeem the property when he filed his complaint and had effected a forfeiture of Burt’s right to compensation for any permanent improvements made to the property since the foreclosure sale.[3]
*1204 Answering, Burt denied that Chess had a right to redeem the property, denied that Burt had failed to provide Chess with a written statement of lawful charges within 10 days after Burt received Chess’s demand, averred that Burt had provided Chess with a written statement of lawful charges within 10 days after Burt received Chess’s demand, and averred that Chess had not responded to that written statement of lawful charges within the time allowed by Alabama law.
On September 8, 2010, Chess amended his complaint (1) to allege that Burt was claiming that certain charges constituted improvements to the property for which he was entitled to compensation as a condition of redemption and (2) to claim that Burt was not entitled to compensation for those charges.
On December 13, 2010, Chess moved for a summary judgment determining that he was entitled to redeem the property for a total of $800,783.76, which consisted of the $300,000 Burt had paid to purchase the property at the foreclosure sale and recording fees and property taxes Burt had paid. Chess asserted that Burt had forfeited his right to compensation for any permanent improvements made to the property since the foreclosure sale by failing to provide Chess with a written statement of lawful charges within 10 days after Burt had received Chess’s demand for such a statement. Chess supported his summary-judgment motion with his affidavit and an excerpt from Burt’s deposition. Chess’s affidavit stated:
“I am the Plaintiff, Steven Chess, in the above styled case. This matter is a redemption of real estate. I have purchased and obtained the right of redemption from former owner Diane Grammer. I emailed to Wade Burt on March 2 and hand-delivered to his home (accepted by a lady that answered the door) the demand for lawful charges. Further, I sent by certified mailed [sic] a demand for lawful charges to Wade Burt which was signed for on March 3, 2010.[4]
“I did not receive a response until March 18 which is more than 10 days after my delivery.
“In deposition Mr. Burt states that he went to attorney Bill Latham to prepare a response, and then was sent to attorney Jackson and he signed a letter and left. He did not know when the letter was mailed. Attached hereto as Exhibit ‘A’ to my affidavit is the envelope which was received by me on March 18.
“The purpose of this affidavit is to establish that I did not receive a response to my demand for lawful charges in ten (10) days as provided by law.”
In the excerpt from Burt’s deposition submitted in support of Chess’s motion, Burt testified that he did not receive a letter from Chess at his house and that, because he lived alone, there was no one at his house who could have accepted Chess’s letter in his absence. Burt further testified that his secretary had signed for a letter from Chess that was delivered to Burt’s business address, that he took the letter to an attorney, and that the attorney *1205 prepared and mailed a letter to Chess responding to Chess’s letter. Burt further testified that sometime after he received Chess’s letter he saw Chess at a restaurant and asked him if he would sell his right to redeem the property to Burt. The excerpt from Burt’s deposition does not contain any testimony indicating the date when Burt received Chess’s letter from his secretary.
On January 10, 2011, Burt amended his answer to assert as a defense that the February 16, 2010, assignment was invalid because Diane’s statutory right of redemption did not exist until the mortgage was foreclosed on February 18, 2010, two days after Diane had executed the February 16, 2010, assignment.
On January 14, 2011, Burt filed a pleading in opposition to Chess’s summary-judgment motion in which he asserted that he had responded to Chess’s demand for a written statement of lawful charges on March 10, 2010, and that a genuine issue of material fact existed regarding whether Chess had a right to redeem the property.
On January 18, 2011, the trial court held a hearing regarding Chess’s summary-judgment motion; however, the trial court did not rule on the motion at that time.
On February 7, 2011, Burt filed a counterclaim against Chess. In his counterclaim, Burt (1) alleged that Richard had assigned his statutory right to redeem the property to Burt on April 22, 2010 (“the April 22, 2010, assignment”) in exchange for Burt’s paying him $50,000 and (2) sought a judgment determining that Burt was entitled to redeem the property. Along with his counterclaim, Burt tendered a check in the amount of $376,679.02 made payable to the trial court’s clerk.
On April 5, 2011, Burt moved for a summary judgment with respect to both Chess’s claim against him and his counterclaim against Chess. First, Burt asserted that he was entitled to a summary judgment with respect to Chess’s claim seeking redemption of the property because, Burt said, Chess did not have a right to redeem the property. This was so, according to Burt, because the February 16, 2010, assignment did not effectively convey Diane’s statutory right to redeem the property to Chess because she had executed it before the foreclosure had actuated her statutory right of redemption on February 18, 2010, and because the February 16, 2010, assignment was not supported by consideration. Second, Burt asserted that he was entitled to a summary judgment with respect to Chess’s claim seeking redemption of the property because, Burt said, he had provided Chess with a written statement of the lawful charges within 10 days after he received Chess’s demand for such a statement and Chess did not have a valid excuse for failing to tender the amount necessary to redeem the property when he filed his complaint seeking redemption of the property. Third, Burt asserted that he was entitled to a summary judgment with respect to his claim seeking redemption of the property because, he said, (1) Chess did not have a right to redeem the property and (2) Burt did have a right to redeem the property by virtue of the April 22, 2010, assignment and had tendered the amount necessary to redeem the property when he filed his counterclaim seeking redemption of the property.
On April 28, 2011, Chess moved for leave to file an amended complaint accompanied by a proposed amended complaint. In his proposed amended complaint, Chess (1) alleged that Diane had executed a second assignment of her right to redeem the property to him on May 14, 2010 (“the May 14, 2010, assignment”), and (2) claimed that he had a right to redeem the property based on the May 14, 2010, as *1206 signment. The record does not indicate whether the trial court ruled on that motion.
Also on April 28, 2011, Chess answered Burt’s counterclaim with a general denial and supplemented his summary-judgment motion. In the supplement to his summary-judgment motion, Chess conceded that Diane’s statutory right of redemption did not exist on February 16, 2010, when she executed the February 16, 2010, assignment; however, he argued that, because the February 16, 2010, assignment stated that Diane assigned to Chess her statutory right of redemption “together with all other right, title and interest of [Diane] in and to the property,” the February 16, 2010, assignment had conveyed Diane’s equity of redemption, which did exist on February 16, 2010, to Chess. He further argued that the foreclosure on February 18, 2010, (1) had extinguished the equity of redemption he had acquired from Diane by virtue of the February 16, 2010, assignment and (2) had actuated the statutory right of redemption to which he was entitled as the transferee of Diane’s equity of redemption.
On May 6, 2011, Chess filed a pleading in opposition to Burt’s summary-judgment motion in which he incorporated the arguments he had made in support of his own summary-judgment motion.
On May 11, 2011, Burt filed a pleading in opposition to Chess’s motion for leave to amend his complaint, asserting that Chess had failed to show good cause for allowing the amendment. Also on May 11, 2011, Burt filed a brief in opposition to Chess’s supplement to his summary-judgment motion in which Burt argued that the February 16, 2010, assignment had not conveyed either Diane’s statutory right of redemption or her equity of redemption to Chess. On May 12, 2011, the trial court held a hearing regarding Burt’s summary-judgment motion.
On May 17, 2011, Chess filed a pleading in which he reiterated his argument that the February 16, 2010, assignment had conveyed Diane’s equity of redemption to Chess. On May 18, 2011, Chess moved to strike Burt’s amended answer, which Burt had filed on January 10, 2011. The record on appeal does not indicate that the trial court ruled on that motion.
On March 20, 2011, the trial court entered orders denying Chess’s summary-judgment motion and granting Burt’s summary-judgment motion without stating its rationale. Chess timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.

Standard of Review

“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ 'We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.' *1207 “Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.], 792 So.2d [369] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).

Analysis

The first issue we must resolve is whether Burt was entitled to a summary judgment with respect to Chess’s claim seeking to redeem the property based on his argument that the February 16, 2010, assignment did not convey a right to redeem the property to Chess. Burt argued that the February 16, 2010, assignment did not convey a right to redeem the property to Chess for two reasons. First, he argued that the language of the February 16, 2010, assignment purported to assign to Chess only Diane’s statutory right of redemption, which did not exist before the foreclosure and, therefore, that the February 16, 2010, assignment conveyed nothing to Chess. Second, Burt argued that the February 16, 2010, assignment was not a valid conveyance because, he said, it was not supported by consideration. Thus, in order to resolve the issue whether Burt was entitled to a summary judgment based on his argument that the February 16, 2010, assignment did not convey a right to redeem the property to Chess, we must resolve two subissues: (1) whether the language of the February 16, 2010, assignment was sufficient to convey a right to redeem the property to Chess and (2), if so, whether the February 16, 2010, assignment was supported by consideration.
With respect to the first subis-sue, Chess concedes that Diane’s statutory right of redemption did not exist on February 16, 2010, when she executed the February 16, 2010, assignment; however, he argues that the language of the February 16, 2010, assignment was broad enough to convey Diane’s equity of redemption, which did exist on February 16, 2010, to him. Specifically, he argues that the language of the February 16, 2010, assignment not only purported to assign him Diane’s statutory right of redemption but also “all other right, title and interest of [Diane] in and to the property,” which he says was broad enough to encompass Diane’s equity of redemption. He further argues that the foreclosure on February 18, 2010, extinguished the equity of redemption he had acquired from Diane by means of the February 16, 2010, assignment but actuated the statutory right of redemption to which he was entitled as a transferee of Diane’s equity of redemption under 6-5-248(a). We agree.
“Alabama classifies itself as a ‘title’ state with regard to mortgages. Execution of a mortgage passes legal title to the mortgagee. The mortgagor is left with an equity of redemption, but upon payment of the debt, legal title revests in the mortgagor. The equity of redemption may be conveyed by the mortgagor, and his grantee secures only an equity of redemption. The payment of a mortgage debt by the purchaser of the equity of redemption invests such purchaser with the legal title. The equity of redemption in either case, however, is extinguished by a valid foreclosure sale, and the mortgagor or his vendee is left only with the statutory right of redemption.”
Trauner v. Lowrey, 369 So.2d 531, 534 (Ala.1979) (citations omitted; emphasis added).
Upon Richard and Diane’s execution of the mortgage, they conveyed legal title to the property to Peachtree Bank and retained an equity of redemption. See Trauner v. Lowrey. “The equity of redemption is a valuable interest, a legal *1208 estate and may be sold or transferred to another.” McGowan v. Williams, 241 Ala. 588, 590, 4 So.2d 164, 166 (1941). Section 6-5-248(a)(5) provides that “[a] transfer of any kind made by the debtor or mortgagor will accomplish a transfer of the interests of that party.” (Emphasis added.)
Given (1) that Diane’s equity of redemption was an interest in the property that could be conveyed before the foreclosure and (2) that § 6-5-248(a) provides that “[a] transfer of any kind” by the mortgagor “will accomplish a transfer of the interests of that party,” we conclude that the language in the February 16, 2010, assignment stating that it assigned to Chess not only Diane’s statutory right of redemption but also “all other right, title and interest of [Diane] in and to the property” was sufficient to convey Diane’s equity of redemption to Chess.
Section 6-5-248(a)(5) provides that the persons entitled to redeem property that has been sold at a foreclosure sale include “[a]ny transferee of the interests of the debtor or mortgagor, either before or after the sale.” (Emphasis added.) Moreover, § 6-5-248(b) provides that “[a]ll persons named or enumerated in subdivisions (a)(1) through (a)(7) may exercise the right of redemption granted by this article within one year from the date of the sale.” Accordingly, we conclude that, if the February 16, 2010, assignment was supported by consideration, Chess was a transferee of Diane’s equity of redemption under § 6-5-248(a)(5) by virtue of the February 16, 2010, assignment and that, as a transferee of Diane’s equity of redemption before the foreclosure, he was entitled to exercise a statutory right of redemption when his equity of redemption was extinguished upon foreclosure on February 18, 2010.
With respect to the second subis-sue, i.e., whether the February 16, 2010, assignment was supported by consideration, Chess argues that it was supported by consideration because it recited that the consideration for Diane’s executing it was “Ten Dollars ($10.00) and other good and valuable consideration.” Under Alabama law, that recited consideration is sufficient consideration to support the conveyance of Diane’s equity of redemption to Chess. See, e.g., Taylor v. Jones, 285 Ala. 353, 357, 232 So.2d 601, 605 (1970) (holding that recitation of one dollar and other valuable consideration as consideration for deeds was sufficient consideration to support the conveyances effected by the deeds). Accordingly, we conclude that the February 16, 2010, assignment was supported by consideration.
Having determined that the language of the February 16, 2010, assignment was sufficient to convey Diane’s equity of redemption to Chess before the foreclosure and that the February 16, 2010, conveyance was supported by sufficient consideration, we conclude that Burt was not entitled to a summary judgment based on his argument that the February 16, 2010, assignment did not convey a right to redeem the property to Chess.
The next issue we must resolve is whether Burt was entitled to a summary judgment with respect to Chess’s claim seeking redemption of the property based on Burt’s argument that Chess failed to tender the amount necessary to redeem the property when he filed his complaint seeking redemption. As this court pointed out in Skelton v. J & G, LLC, 922 So.2d 926, 931 (Ala.Civ.App.2005):
“Section 6-5-253(a)[, Ala.Code 1975,] provides, in pertinent part, that ‘[anyone entitled and desiring to redeem real estate under the provisions of this article must also pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, ... and all *1209 other lawful charges.’ ‘[I]n order to redeem under the [redemption] statute[s][, § 6-5-247 et seq., Ala.Code 1975] one must either aver a payment or tender of all the amounts required by the statute, or show a valid excuse for failure to do so.’ Moore v. Horton, 491 So.2d 921, 923 (Ala.1986).
“Section 6-5-256, Ala.Code 1975, provides:
“‘Upon the filing of any complaint as provided in these sections and paying into court the amount of purchase money and the interest necessary for redemption and all lawful charges, if the written statement thereof has been furnished or, if not furnished, offering to pay such debt or purchase price and all lawful charges, the circuit court shall take jurisdiction thereof and settle and adjust all the rights and equities of the parties, as provided in this article.’ ”
(Footnote omitted.) However,
“[u]nder the plain language of § 6-5-252 and § 6-5-256, [Ala.Code 1975,] it is clear that a redemptioner is excused from tender at the time he files the complaint to redeem where he has timely furnished the purchaser with a demand for a statement of lawful charges and the 10-day statutory period for response has expired without the purchaser furnishing the redemptioner the statement of lawful charges. Our supreme court has so held in Shealy v. Golden, 897 So.2d 268 (Ala.2004) (as modified on denial of rehearing), and Purcell v. Smith, 388 So.2d 525 (Ala.1980) (both recognizing that, upon timely demand made by the redemptioner, the purchaser’s failure to timely furnish the redemptioner with the statement of lawful charges excuses tender and forfeits the purchaser’s right to payment for improvements); see also Harris v. Bradford, 245 Ala. 434, 17 So.2d 145 (1944) (failure of the purchaser to furnish the statement of debt and lawful charges upon demand made by the re-demptioner relieves the redemptioner of the necessity of making tender of the purchase price and lawful charges as a condition precedent to the maintenance of an action to exercise the statutory right of redemption); Lee v. Macon County Bank, 233 Ala. 522, 172 So. 662 (1937) (the failure of the purchaser to timely furnish the redemptioner, within 10 days after such written demand is made on the purchaser, a written itemized statement of the debt and lawful charges claimed by the purchaser and required for redemption results in the purchaser’s forfeiting all claims or right to compensation for improvements; also the redemptioner is entitled to file a bill to enforce the statutory right of redemption without a tender by simply offering to pay purchaser’s debt and all lawful charges).”
Skelton v. J & G, LLC, 922 So.2d at 932 (footnote omitted).
Thus, in order to resolve the issue whether Chess was required to tender payment for all lawful charges when he filed his complaint seeking redemption, we must resolve the issue whether Burt provided Chess with a written statement of lawful charges within 10 days after demand.
“[I]n Purcell v. Smith, 388 So.2d [525] at 528 [ (Ala.1980) ], our supreme court held that when a redemptioner mails the demand for lawful, charges, ‘[t]he ten-day period [under § 6-5-252] for response by the purchaser must begin to run from actual receipt by the purchaser of the demand.’ In so holding, our supreme court reasoned that where either the redemptioner or the purchaser relies on the vagaries of modern mail delivery *1210 to furnish the other party with the demand or the statement of lawful charges, that reliance cannot adversely affect important rights of the party to whom the demand or the statement of lawful charges is sent. Purcell v. Smith, 388 So.2d at 528. If the vagaries of the mail delivery affect an important right of either party, it must affect the right of the party who is relying on the mail for compliance with § 6-5-252. Purcell v. Smith, 388 So.2d at 528. Specifically, in Purcell our supreme court stated:
“ ‘[A] demand for a statement of lawful charges, sent by mail, is deemed made when received by the purchaser. The burden of compliance rests upon the redemptioner and any delay in the making of the demand must, similarly, affect his right rather than that of the purchaser upon whom the demand is made. Since the forfeiture of important rights depends upon the timeliness of a response, the purchaser cannot be penalized by the uncertainties of the mails and the burden rests on the redemptioner to make a written demand, by whatever mode, within the statutory time limit. Of course, the purchaser may not intentionally defeat the privilege to redeem. See Hudson v. MoHon, 231 Ala. 392, 165 So. 227 (1936).’
“Purcell v. Smith, 388 So.2d at 528-29.”
Skelton v. J & G, LLC, 922 So.2d at 933 (emphasis added).
Thus, the 10-day period for Burt to provide Chess with a written statement of lawful charges began running on the date Burt actually received Chess’s letter demanding a written statement of lawful charges. Chess’s affidavit stated that he hand delivered a copy of his letter to Burt’s house and left it with a lady there; however, Burt testified in his deposition that he lived alone and that there was no one at his house who could have accepted the letter in his absence. Moreover, Chess did not submit any evidence indicating that Burt himself actually received the letter Chess allegedly delivered to a lady at Burt’s house. Likewise, although Chess’s affidavit stated that he had e-mailed a copy of his letter to Burt, Chess did not submit any evidence indicating that Burt actually received that copy of the letter. The record contains a certified-mail receipt indicating that, on March 2, 2010, Burt’s secretary signed the certified-mail receipt for a copy of Chess’s letter that Chess had sent to Burt’s business address by certified mail. The record also contains evidence indicating that Burt actually received that copy of the letter from his secretary; however, the record does not indicate the date when Burt received it from his secretary. Consequently, we conclude that a genuine issue of material fact exists regarding the date when Burt actually received Chess’s letter demanding a written statement of lawful charges.
Thus, because a genuine issue of material fact exists regarding the date when Burt actually received Chess’s letter demanding a written statement of lawful charges, a genuine issue of material fact exists regarding whether Chess was required to tender the amount necessary to redeem the property when he filed his complaint seeking redemption. Accordingly, Burt was not entitled to a summary judgment with respect to Chess’s claim seeking redemption based on Burt’s argument that Chess was not entitled to redeem the property because he had failed to tender the amount necessary to redeem the property when he filed his complaint seeking redemption. Therefore, we reverse the summary judgment in favor of Burt with respect to Chess’s claim seeking *1211 redemption.[5]
The next issue we must resolve is whether Burt was entitled to a summary judgment with respect to his counterclaim seeking redemption of the property. Chess argues that Burt was not entitled to a summary judgment with respect to Burt’s counterclaim seeking redemption because, Chess says, he was entitled to redeem the property.
If Chess, who sought redemption before Burt, is entitled to redeem the property, Burt would not be entitled to redeem it under § 6-5-248(d). Section 6-5-248(d) provides:
“(d) When any debtor, mortgagor, their transferees, their respective spouses, children, heirs, or devisees redeem, all recorded judgments, recorded mortgages, and recorded liens in existence at the time of the sale, are revived against the real estate redeemed and against the redeeming party and further redemption by some party other than the mortgagor or debtor under this article is precluded.”
(Emphasis added.)
The plain language of § 6-5-248(d) indicates that, if Chess, who is a transferee of a mortgagor, is entitled to redeem the property, Burt would not be entitled to redeem the property because Burt is a transferee of a mortgagor rather than a mortgagor or debtor — only a mortgagor or debtor can redeem after a transferee of a mortgagor has redeemed. Accordingly, because (1) Burt is not entitled to redeem the property if Chess is entitled to redeem the property and (2), as discussed above, a genuine issue of material fact exists regarding whether Chess is entitled to redeem the property, Burt was not entitled to a summary judgment determining that he is entitled to redeem the property. See § 6-5-248(d). Therefore, we reverse the summary judgment in favor of Burt with respect to his counterclaim seeking redemption of the property.

Conclusion

In summary, we reverse the order of the trial court granting Burt’s summary-judgment motion, and we remand the cause for further proceedings consistent with this opinion. Our resolution of this appeal based on the issues discussed above pre-termits discussion of the other issues raised by Chess.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Chess also purports to appeal from an order denying his summary-judgment motion. “However, subject to exceptions not here applicable, appellate courts do not review the denial of a summary-judgment motion." Buco Bldg. Constructors, Inc. v. Mayer Elec. Supply Co., 75 So.3d 121, 130 (Ala.Civ.App. 2010).

. Section 6-5-248(a)(5) provides:
"(a) Where real estate, or any interest therein, is sold the same may be redeemed by:
[[Image here]]
"(5) Any transferee of the interests of the debtor or mortgagor, either before or after the sale. A transfer of any kind made by the debtor or mortgagor will accomplish a transfer of the interests of that party.”

. Section 6-5-252, Ala.Code 1975, provides:
"Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee. If *1204 the purchaser or his or her transferee fails to furnish a written, itemized statement of all lawful charges within 10 days after demand, he or she shall forfeit all claims or right to compensation for improvements, and the party so entitled to redeem may, on the expiration of the 10 days, file his or her complaint without a tender to enforce his or her rights under this article and file a lis pendens with the probate court.”

. The certified-mail receipt indicates that Burt’s secretary signed for Chess’s letter on March 2, 2010, rather than March 3, 2010.

. We note that, because, as discussed above, a genuine issue of material fact exists regarding whether Chess was required to tender the amount necessary to redeem the property when he filed his complaint seeking redemption the trial court properly denied Chess’s summary-judgment motion.